# CASES DETERMINED

## IN THE

# UNITED STATES COURT OF APPEALS

## FOR THE

# INDIAN TERRITORY

---

CASTEEL, et al, vs McNEELY, et al.

## Opinion delivered October 5, 1901.

1. *Evidence—Rental Value.*

In arriving at the cash rental value of lands, the possession of which is sought by the landlord against the tenant with damages for their detention, the jury may consider, where it is customary to rent such lands upon shares of the crops, the amount of crop which the land produced and the market price of such crops.

2. *Indian Lands—Action for Possession—Improvements on—Evidence.*

Under Sec. 3 of the Curtis Bill (Act of Cong. June 28, 1898) parties in possession, under lease, of Indian lands are entitled to an offset against the rental value of such lands, of the value of the improvements which they have placed thereon; and the value of such improvements must be determined in the manner provided in said Sec. 3, and not by any improvement contract between the parties; such a contract can only be introduced as corroborative of other testimony.

3. *Verdict—Sufficiency of Evidence on Appeal.*

Where there is conflicting evidence a verdict sustained by the trial court will not be set aside on appeal.

(2)

4. *Indian Lands—Improvement Contracts with Citizenship Claimants.*

> The provisions of Sec. 3 of the Curtis Bill (Act of Cong. June 28, 1898), apply only to persons holding lands under a rental contract made with a citizen of an Indian nation, and contracts made with claimants to such citizenship whose citizenship is afterwards denied by the Commission to the Five Tribes or the U. S. Courts, do not bring the lessees within the provisions of the above statute permitting them to recover the value of their improvements.

5. *Indian Lands—Sale of Improvements—Transfer of Right of Possession.*

> Under the Curtis Bill (Act of Cong. June 28, 1898), Sec. 4, citizenship claimants whose claims were decided adversely were allowed to hold possession of lands occupied by them under claim of citizenship, until Dec. 31, 1898, and, prior to that time, to sell the improvements thereon to some citizen. But a sale of improvements after that date, even to a citizen, does not convey any right of possession to the land, so as to constitute the purchaser a landlord of the tenant of the previous owner.

6. *Indian Lands—Recovery of, by Citizen or Nation.*

> Where the possession of Indian lands is held by a non-citizen members of an Indian tribe desirous of taking such lands as an allotment cannot maintain an action to recover the possession thereof. Such right of action is only in the soverign, in this case, the Choctaw Nation.

Appeal from the United States Court for the Central District.

William H. H. Clayton, Judge.

Action of forcible detainer by Myrtle McNeeley and others against J. W. Casteel and others. Judgment in favor of plaintiffs. Defendants appeal. Reversed.

The plaintiffs below (appellees here) on the 27th day of August, 1900, filed their complaint against the defendants below (appellants here), and on January 10, 1901, they filed an amended complaint alleging that they are Choctaw Indians, and the owners and entitled to the immediate possession of certain lands de-

scribed; that they purchased same from C. M. Randall, who is also a Choctaw; that defendants are citizens of the United States, and hold under lease or improvement contract made by said Randall to K. W. Casey and Thomas Casey on or about December 7, 1893, from whom defendants purchased, and thereby became tenants of plaintiffs from the time plaintiffs purchased from Randall, on March 25, 1899. Plaintiffs further allege that the rents up to and including the year 1899 had fully compensated defendants for their improvements, and that since January 1, 1900, defendants were wrongfully holding possession of said premises. Plaintiffs demanded possession in writing, and gave bond under the statute. Defendants gave bond and kept possession, and plaintiffs ask judgment for possession and for rents and damages. On the same day defendants filed an answer, and denied the allegations of plaintiffs' complaint. For further answer, defendants allege that K. W. Casey and T. J. Casey prior to January 1, 1898, entered into an improvement contract with C. M. Randall, "who claimed to be and was a recognized citizen of the Choctaw Nation"; that said Caseys made valuable and lasting improvements, and that they and these defendants have not enjoyed the possession a sufficient length of time to compensate them for the same; that on December 7, 1893, the said Caseys paid Randall $325 for the improvements then on said place, and the value of the improvements made by said Caseys on said premises exceeded the value of the rents at the end of the year 1900 in the sum of $1,409.70; that in December, 1899, defendants made a contract with said Caseys to pay them $350 "as an advanced payment for the future rents and profits accruing to the said Caseys on said premises under said improvement contract." Defendants pray judgment as follows: "First, that they be dismissed with their costs; second, that if plaintiffs be adjudged to be the owners of the premises herein sued for, and these defendants to be their tenants, then that defendants have judgment for the said sum of $1,409.70 as a balance due for the making of the improvements

thereon, and that, if the same be not paid within such reasonable time as the court shall specify, the court award the defendants possession of said premises such time as will pay such judgment, for their costs of suit, and for all proper relief." On same day the case was submitted to a jury, and on January 22, 1901, the jury returned the following verdict: "We, the jury duly impaneled and sworn, find the issues for the plaintiff, and find that the value of the rents of the land in controversy exceeds the value of the improvements in the sum of $501.50(five hundred and one, 50-100 dollars). R. H. Ernest, Foreman." On January 23, 1900, defendants filed a motion for new trial, and on January 25, 1900, plaintiffs remitted $151 of said verdict, and on the same day the court overruled the motion for new trial. Defendants excepted and appealed to this court.

*Winningham* and *Redwine,* for appellants.

*Mansfield, McMurray & Cornish* and *McKennon & Dean,* for appellees.

TOWNSEND, C. J. The appellants have filed 12 specifications of error, as follows: "(1) Because the verdict of the jury was contrary to the law and the evidence. (2) Because the court erred in admitting illegal, improper, incompetent, and immaterial evidence offered by the plaintiff, over the objections and exceptions of the defendants made at the time. (3) That the court admitted illegal, improper, irrelevant, and immaterial evidence offered by the plaintiff, over the objections and exceptions of the defendants, made at the time, in this, to wit: That the court permitted witnesses to testify as to the amount of cotton and corn that the land in controversy produced per acre, and what cotton would sell for per 100 lbs., to prove the money rental value of the same, to which ruling of the court defendants at the time duly excepted. (4) Because the court erred in permitting any testimony to be introduced as to the rental value of the land in controversy and the improvements made thereon prior to the year 1900. (5)

Because the court erred in permitting any testimony to be introduced as to the rental value of the land in controversy and the improvements made thereon prior to the settlement between Randall and Casey on July 25, 1896. (6) Because the court erred in holding that the improvement contract between C. M. Randall and K. W. Casey was void, and in permitting any testimony to be introduced as to the rental value of the land, contrary to the terms of the contract prior to January 1, 1900, to which ruling of the court defendants at the time duly excepted. (7) Because the verdict of the jury clearly appears to have been given under the influence of passion or prejudice against the defendants, and bias in favor of the plaintiff. (8) Because of error in the assessment by the jury of the amount of recovery, the same being excessive. (9) Because the court erred in permitting the witnesses offered by the plaintiff to testify as to the value of the improvements placed upon the land, and the rental value of the land, without first having qualified that they knew what such values were, to which ruling of the court defendants at the time excepted, and still except. (10) Because the court erred in holding that the purchase by plaintiff from Randall after the 31st day of December, 1898, conveyed to him the citizen's title to the land in controversy, and that by reason of such purchase he became the landlord of the tenants of Randall, to which ruling of the court defendants at the time excepted, and still except. (11) Because the court erred in holding that the burden of proof was on defendants to prove the value of the improvements and the rental value of the land, and not permitting defendants' attorneys to open and close the argument, to which ruling of the court defendants at the time excepted, and still except. (12) Because the court erred in refusing defendants' counsel the privilege to open and close the argument after holding that the burden of the proof was upon the defendants, to which ruling of the court the defendants at the time excepted, and still except." Appellants, while insisting that each and all of their assignments possess merit, de-

sire especially to call the attention of the court to the third, sixth, eighth, and tenth assignments. The error claimed by defendants under the third specification is that the court erred in permitting the witnesses to testify, over the objection of appellants, to the amount of the cotton and corn that the land produced per acre, and what cotton would sell for per 100 pounds, to prove the money rental value of said land. In the record the following appears: "Mr. Redwine: He has shown the character of the land, and I do not think it is proper to arrive at the rental value of the land by showing what the crop will produce. The Court: It don't show absolutely the rental value, but it tends to do so. It has been shown that certain land rents for $2 an acre. Now, then, if it is shown that this is more productive land, why, of course, it would be worth more. Mr. Redwine: We object to the testimony, and save our exceptions. The Court: Very well. I think it goes to the credibility of the witness. Mr. Redwine: It may do that. * * * Q. Now, then, what had cotton been selling for out there? The Court: I don't think you can do that. The proof must be as to what was the rental value of the land, by a man who knows. You could argue to the jury, and this goes to the credibility of the witness, but that is not the way to arrive at the rental value. Of course, the witness is supposed to take that into consideration, but you can't show that the cash value of the land was $10 per acre because 200 pounds of cotton would be worth $10. Mr. Mansfield: Does the court hold that we are confined to proving the cash rental value of the property? The Court: That is what you must prove. If the land had no cash rental value, then you get at its value in any way you can. Mr. Mansfield: I want to ask him if the usual way of renting land out there is not for a third and fourth of what it produces. The Court: Ask the question. Mr. Mansfield: I will ask you if it is not usual to rent land for a third and fourth all over the country? A. There is a heap of it rented that way. Q. Isn't it usual to rent it for a third and fourth? A. The biggest

májority of it is.   Q.   That is the usual way it is rented?   A. Biggest majority of it is.   The Court:   You may ask the question.   Mr. Winningham:   The defendant excepts to the ruling of the court."   It appears from the above that the evidence was admitted by the court to assist the jury in arriving at what the cash rental value was.   If the land was rented for a third and fourth of the crop, no other method could be followed than to ascertain the amount of the crop, and the price it brought, to ascertain how much the rent amounted to in cash.   This could be shown for one year, or the average through several years would aid the jury in arriving at the cash value of the rent.   We think the evidence was admissible.

The sixth specification states that the court erred in allowing testimony to be introduced as to the rental value of the land, contrary to the terms of the contract, prior to January 1, 1900. The appellants are allowed by the terms of the Curtis bill to set up their improvements made under a lease, agreement, or improvement contract.   This is an equitable provision, designed to protect non-citizens who had placed lasting or valuable improvements upon property under contracts which by the terms of this same act of congress are declared to be absolutely void.   And, in allowing them to set up the value of these improvements and offset them against the rents of the property, congress laid down the rule to be followed in ascertaining the value of said improvements and rents, and that is, "The court or jury trying said cause shall determine the fair and reasonable value of such improvements, and the fair and reasonable rental value of such lands for the time the same shall have been occupied by such person;" and the court followed the rule laid down by the statute.   See the record, as follows:   "The Court:   If the party can show he has placed improvements upon the land, notwithstanding it may have been a violation of the Choctaw laws, under the Curtis bill he would be entitled to recover.   Mr. McKennon:   That is just what we are getting at.   Mr. Redwine:   Yes; and the contract provides what

is to be paid for the clearing of the land. The Court: I held yesterday that you could not do that. I held that you must show the reasonable value of the improvements. It may be introduced merely as a circumstance corroborating other testimony." The authorities cited by appellants were cases tried in this jurisdiction prior to the enactment of the act of June 28, 1898, and have no application to the construction of this statute by the court in this case. We think the ruling of the court to which appellants except, in this particular, was correct.

In appellants' brief, under the eighth specification, the counsel discuss the first, seventh, and eighth assignments, which all complain of the verdict of the jury. We have with close attention read the evidence contained in the record, and it is evident that there was much conflict in the testimony in regard to the character and value of the improvements and the value of the rents. The question was one peculiarly within the province of the jury to determine, and in fact, under the following agreement of counsel, was the only question submitted to the jury, to wit: "It is here agreed that the only question to be submitted to the jury is the value of the improvements placed upon the land in controversy, and the rental value of the land; that the difference is to determine the verdict of the jury. All other material questions to the issues presented by the pleadings are admitted by the parties. Mr. Winningham: By this agreement we do not waive any exceptions heretofore taken." It is apparent from the testimony that there was sufficient evidence to sustain the verdict, provided the jury believed the evidence of appellee's witnesses over those of appellants. Where the evidence is conflicting, it is the general rule in appellate courts not to set aside a verdict. Neither will they set aside a verdict where the jury have disregarded testimony of apparently credible witnesses. Neither will they disturb the verdict and grant a new trial unless the damages are such as to strike every one with the enormity and injustice of them. Judges of appellate courts do not see and hear the wit-

nesses and observe the manner of their giving their testimony, which the trial judge does, and hence are not so ready to set aside verdicts.See Thomp, Trials, Secs. 2067, 2273. The court stated to the jury fully and fairly their duties in the event of conflict in the evidence, as follows: "If there is a conflict in the evidence, it is your duty to reconcile it if you can. If not, then you are to determine which set of witnesses you can believe. And in doing this you take into consideration the intelligence of the witness; his means of knowing that about which he testifies. Is he a man who knows what he is talking about? Has he had sufficient experience? Is he a man of good judgment? If you find that any witness is prejudiced upon the one side or the other, you will take that into consideration in weighing his testimony, upon the theory that a man who is prejudiced against another would be more apt to curb his testimony against him than if he were not so prejudiced." The trial court, who had heard and observed the manner of the witnesses while testifying, refused to set the verdict aside, and this court cannot say from the evidence in the record that it "preponderates to such an extent as to create an unavoidable conclusion that the verdict was the result of passion or prejudice."

The tenth specification is as follows: "Because the court erred in holding that the purchase by plaintiff from Randall after the 31st day of December, 1898, conveyed to him the citizen's title to the land in controversy, and that by reason of such purchase he became the landlord of the tenants of Randall, to which ruling of the court defendants at the time excepted, and still except." The record upon which this specification is based is as follows: "The Court: If he has been rejected by the Dawes commission or by the decree of the court, then he comes within the first section of paragraph 3. We will ask the question right now. (To witness:) Have you been rejected by the Dawes commission? A. Yes, sir. Q. You applied to the commission to be enrolled, and were rejected? A. Yes, sir. Q. Did

you apply to the United States Court?   A. Yes, sir.   Q.  And
the court found against you?   A. Yes, sir.   The Court:   Under
that, Randall would have a right to sell his improvements.   Mr.
Redwine:   Yes; but he didn't sell.   He claimed to be a citizen,
and was denied, and after having been denied he had until the 31st
of December, 1898, to dispose of his improvements.   After that
time he would have no right to sell, and any contract he would
make with McNeeley did not carry any title or interest.  ' There
would be no privity of landlord and tenant existing between the
parties, and he could not convey any.   The Court:   I think I
understand the case now, and I hold that McNeeley, being a
citizen of the Choctaw Nation, taking the land as he did from
Randall, who made the contract with the tenants, would be liable
for the difference between the value of the improvements and the
rental value of the land.   Mr. Winningham:   We want to save
an exception to the holding of the court that Randall had any
power to convey any title to McNeeley after his time under the
Curtis bill had elapsed."   Section 4 of the Curtis bill (30 Stat.
496; Ind. T. Ann. St. 1899, p. 29) provides as follows:   "Sec. 4.
That all persons who have heretofore made improvements on
lands belonging to any one of the said tribes of indians, claiming
rights of citizenship, whose claims have been decided adversely
under the act of congress approved June tenth, eighteen hundred
and ninety-six, shall have possession thereof until and including
December thirty-first, eighteen hundred and ninety-eight; and
may, prior to that time, sell or dispose of the same to any mem-
ber of the tribe owning the land who desires to take the same in
his allotment; provided, that this section shall not apply to im-
provements which have been appraised and paid for, or pay-
ment tendered by the Cherokee Nation under the agreement
with the United States approved by congress March third,
eighteen hundred and ninety-three."   The appellants in their
answer allege that they entered into an improvement contract
with C. M. Randall, "who claimed to be and was a recognized

citizen of the Choctaw Nation;" and in this action they seek the benefit of the proviso to section 3 of the Curtis bill (30 Stat. 496; Ind. T. Ann. St. 1899, p. 28) to recover the reasonable value of the lasting and valuable improvements placed upon said land under their improvement contract with said Randall.    But now they say that Randall's claim to citizenship having been decided adversely under the act of congress of June 10, 1896, he was only allowed until December 31, 1898, to sell his said improvements, and not having sold to McNeeley until March 25, 1899, that he had no title, and could convey none to McNeeley.    It occurs to us that, if Randall was not a citizen of the Choctaw Nation, the improvement contract made between appellants and said Randall had no validity whatever, for it was a contract between white men, and not Indians, and only contracts made with the tribes or the citizens thereof can have the benefit of the proviso to section 3 of the Curtis bill, viz.:    "Provided always, that any person being a noncitizen in possession of lands, holding the possession thereof under an agreement, lease or improvement contract with either of said nations or tribes, or any citizen thereof, executed prior to January first, eighteen hundred and ninety-eight, may, as to lands not exceeding in amount one hundred and sixty acres, in defense of any action for possession of said land show that he is and has been in peaceable possession of such lands, and that he has while in such possession made lasting and valuable improvements thereon, and that he has not enjoyed the possession thereof a sufficient length of time to compensate him for such improvements."    It therefore follows that appellants have no claim under the statute to recover the value of their improvements.

Have the appellees such a title as will enable them to maintain this action of unlawful detainer?    Randall, not being an Indian, had no right to hold or lease Indian land.    Hence he could make no valid contract of lease with appellants, and, if he could make none, he had no right or claim to possession of land to

sell to appellees, and therefore there is no such privity of contract between appellants and appellees as would sustain this action. Under the liberal and equitable provision of section 4, supra, Randall having made improvements on Indian lands, claiming citizenship, and said claims having been decided adversely, he was authorized to have possession of said improvements until December 31, 1898, and was authorized prior to that time to sell and dispose of the same. He did not sell until March 25, 1899, to appellees. Now, whether the title obtained to said improvements by appellees by their purchase from Randall was void, or only voidable, is wholly immaterial, in our opinion, so far as this case is concerned. The statute did not authorize the sale of any right to possession of the land. Hence no right of possession to the land could pass to appellees by such purchase from Randall. It necessarily follows that the relation of landlord and tenant between the parties to this suit did not exist, and therefore this action of unlawful detainer cannot be sustained. Neither do we agree with the argument of appellees that they could maintain this action simply because they were Choctaw Indians, and wanted to take this land for their allotment. The sovereign alone can bring such an action. See Sanders vs. Thornton, 38 C. C. A. 508, 97 Fed. 863, as follows: "The first assignment of error is that the court erred in refusing to charge the jury at the request of the plaintiff that, if the defendant is a citizen of the United States, he had no right to purchase or hold improvements on the public domain of the Cherokee Nation, and that plaintiff is entitled to a verdict. If the defendant was a citizen of the United States, and for that reason was not entitled to hold lands and improvements thereon in the Cherokee Nation, these facts alone would not entitle the plaintiff to recover, as the instruction asked broadly asserts. Several other things would have to occur to entitle the plaintiff to oust the defendant. These facts might entitle the sovereign to oust the defendant, but, if the defendant was not entitled to hold lands or improvements thereon in the Cherokee

Nation, that is of no concern of the plaintiff, and he cannot profit by it in this action. The sovereign alone—either the United States or the Cherokee Nation—has 'the right to oust him of his possession or occupancy on that ground." We think this conclusive of this case, and that the same should be reversed, with directions to dismiss the same.