NIVENS vs NIVENS.

Opinion delivered October 5, 1901.

1. *Appeal—Assignment of Errors—Affirmance for Failure Of.*

On appeal the failure of appellant to specifically assign the errors com-
plained of subjects the case to affirmance under Rule 10, subdiv. 2;
but where specifications are supplied before the hearing and no motion
for affirmance is made, the case will be fully heard.

2. *Cherokee Laws—Not Enforceable in U. S. Courts—Descent and Distribution*

The Act of Cong, June 28, 1898, (Curtis Bill) prohibited the enforcement
of the laws of the Cherokee Nation in the U. S. Courts in Indian Terri-
tory. After that date, the law of descents and distributions in force
in the Indian Territory is that provided by Chapter 49, Mansfield's
Digest.

3. *Dower—Descents and Distributions.*

Where a husband died intestate leaving surviving him, his widow and
his mother, his estate was inherited by his mother subject to the
widow's dower interest of one-third the personalty and realty, under
Chap. 49, Mansf. Dig. and Secs. 2571 and 2591 Mansf. Dig. (Secs.
1859 and 1879, Ind. Ter. Stat.)

Appeal from the United States Court for the Northern
District.

JOHN R. THOMAS, Judge.

Suit for an injunction and an accounting by Bettie Nivens
against Julia Nivens. An order was made refusing an injunction
and appointing the defendant a receiver, and referring the case to
the master in chancery. From an order overruling exceptions to
the master's report and confirming such report, defendant ap-
peals. Reversed.

The plaintiff below (appellee here) filed her complaint in
the Northern district against the defendant below (appellant

here) December 6, 1898, and alleged that Moses Nivens died in the year 1871; that the defendant is his widow, and that Emma Nivens and Jeff Nivens were the children of said Moses Nivens and the defendant; that plaintiff is the widow of Jeff Nivens; that Emma Nivens died in the year 1889, without issue, and that Jeff Nivens died in the year 1897, and left no children; that Moses Nivens, at the time of his death, was the owner of a tract of land in the Cherokee Nation on the right bank of the Arkansas river, at a point known as "Nivens Ferry"; that he also owned, at the time of his death, the ferry property, which she alleges to be a valuable property, and that he also owned 800 head of cattle; "that during the lifetime of Jeff Nivens the defendant herein never accounted to him for any portion of the personal property left by his father, Moses Nivens, or paid or offered to pay any consideration for his part of said property which had been received by this defendant and converted to her own use; that during the lifetime of Jeff Nivens this defendant did share with him a portion of the profits arising from said ferry, and Jeff Nivens also, together with this plaintiff, lived with the defendant on the old home place, and in that way shared, to a certain extent, since 1892, in the profits of said farm;  *   *   *  that the amount received by Jeff Nivens and this plaintiff was much less in value than the annual profit upon or the rental value of their one-third of the old home place; that since the death of the husband of this plaintiff, Jeff Nivens, the defendant has wholly failed and refused to share with her, or account to her for, any part of the profits arising and accruing out of the ferry property, or out of the old home place, and now denies that the plaintiff has any right, title, or interest whatever therein."    Plaintiff prays for an injunction to restrain defendant from interfering with a small improvement made by her husband in his lifetime and herself, and for a receiver to take charge of the profits of the ferry property, and the rents and profits of the homestead; that the case be referred to a master to take evidence and state an account "between the defendant and the plaintiff in regard to the profits heretofore received by

the defendant out of said ferry property and said homestead place, and of all matters growing out of the goods, chattels, and effects left by Moses Nivens at the date of his death"; that commissioners be appointed to set apart one-third of the premises known as the "Old Nivens Place," and that plaintiff be declared the owner of said one-third; and "that the court require the defendant to give security to faithfully account for future profits arising and accruing out of the Nivens ferry property, and conditioned that she will pay over to this plaintiff promptly at the end of each year one-third of all the profits arising out of said ferry property, and will make a true accounting in regard thereto." Defendant filed answer, and denies that she and Emma and Jeff Nivens were the only heirs of Moses Nivens, but that there was another child, Moses Nivens, Jr., who died after Moses Nivens, Sr., at the age of 5 years; denies that her husband at his death owned 800 head of cattle, but owned only a one-half interest in 450 head. "The defendant states further that all the profits arising from the ferry mentioned in plaintiff's complaint, and all the profits and rents arising from the old Nivens place and homestead, and the profits of every kind arising out of the estate of the defendant's husband are far less than the amount of advances made to the children and heirs at law of Moses Nivens, deceased, and especially the advances made to Jeff Nivens by the defendant since the death of her husband, Moses Nivens. * * * The defendant further states that the entire value of all the estate of her said husband will not exceed the sum of $————at this time, and that all that portion of said estate which has been disposed of heretofore and since the death of her husband has been used by the defendant for the maintenance and education of the children of her and her deceased husband, except large sums of money which she has used and expended in the adjustment of divers and sundry claims justly due from her said husband to various and sundry persons at the time of his death." On January 24, 1899, an order was made by Judge Springer refusing an injunction, and

appointing the defendant a receiver upon her giving bond, and referring the case to N. A. Gibson, master in chancery. The bond was executed by the defendant as receiver, and the master took the testimony of witnesses, and filed his report, which in part is as follows: "That the property in controversy herein consists of a ferry across the Arkansas river just below the mouth of the Grand river, and of the farm of about 150 acres lying near said ferry in the Cherokee Nation, together with the proceeds of the said ferry and farm since the death of Jeff Nivens on December 13, 1897. That it is evident that, though there was never any settlement between Jeff Nivens and the defendant, that he received his proper share of the profits of the estate during his lifetime; and hence I find that the only profits from said estate to be considered herein are those arising since his death. That the proof shows that the farm is of a rental value of about $250 per annum, and that the ferry produces about $600 net per annum. That this ferry was originally the property of the father of Moses Nivens, and was owned and operated by Moses Nivens until his death, since which it has been operated by the defendant. That it was listed as a part of the estate of Moses Nivens in the schedule above referred to, and shown therein to bring in an annual income of $2,000. That from the evidence I find that one-half of the Nivens farm as it now stands belongs to the estate of Jeff Nivens, deceased, of which the plaintiff is the only heir, and the plaintiff is entitled to recover from the defendant one-half of the rents for the years 1898 and 1899, or $250, and also one-half of the profits of the ferry since December 13, 1897, which approximate $750. The premises considered, I recommend that the plaintiff recover of the defendant one-half of the said farm and improvements, and the sum of one thousand dollars as one-half of the profits of the said farm and ferry up to this time and one-half of the future profits of the said ferry." Exceptions to said report were filed by the defendant, but the same were overruled, and said report was confirmed by the court, to which action of the court defendant ex-

cepted, and prayed an appeal to this court.

Thos. Marcum, Thos. Owen, S. S. Fears, and W. J. Crump, for appellant.

Hutchings & West, for appellee.

TOWNSEND, C. J.    The appellee, in her brief, insists that the judgment of the court below should be affirmed because of the failure of appellant to make assignment of errors as required by the second subdivision of rule 10 of this court.    The language of the rule is clear, and, if the assignment of error as originally printed in appellant's brief could alone be looked to, appellee's contention for an affirmance of the judgment should be complied with; but should not the appellee have moved the court, upon the filing of appellant's brief, to affirm the judgment by reason of the failure of appellant to comply with said second subdivision of rule 10?    In Railroad Co. vs Cutting, 15 C. C. A. 597, 68 Fed. 586, that practice was pursued by the appellees.    No such motion was made, however, and now we find in appellant's brief, in addition to the original printed specification of error, two other specifications, typewritten, and pasted in the brief, so that the specifications of error altogether, as now presented to this court, are as follows:    "The court erred in rendering judgment in favor of appellee for one-half of the farm and ferry in controversy, and for one-half of the rents and profits thereof.    The court erred in rendering judgment in favor of appellee for more than one-fourth of the property sued for, because the evidence in the case, under the law of descents and distributions of both the Cherokee law and the law of Arkansas in force in the Indian Territory, show that appellant inherited three-fourths of the property sued for, and appellee not more than one-fourth.    Because the court erred in holding that the ferry franchise under which Moses Nivens, deceased, husband of appellant, held, was a part of the estate of

Moses Nivens, deceased, for a longer term than the year for which he had paid for it." Both appellant and appellee, in their briefs, have cited copiously from the laws of the Cherokee Nation. This suit was filed December 6, 1898, and on June 28, 1898, in what is known as the "Curtis Bill", congress enacted as follows: "Sec. 26. That on and after the passage of this act the laws of the various tribes or nations of Indians shall not be enforced at law or in equity by the courts of the United States in the Indian Territory." If the laws of the various tribes are not to be enforced by the courts of the United States in the Indian Territory, the inquiry must then be, what are the statutes of Arkansas as to descents and distributions that are in force in the Indian Territory? Section 2522, Mansf. Dig. (section 1820, Ind. T. St. 1899), with first and second subdivisions, are as follows:

"Sec. 2522. When any person shall die, having title to any real estate of inheritance, or personal estate, not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following manner: First, to children, or their descendants, in equal parts. Second, if there be no children, then to the father, then to the mother; if no mother, then to the brothers and sisters, or their descendants, in equal parts."

Section 2528, Mansf. Dig. (section 1827, Ind. T. St. 1899), is as follows: "Sec. 2528. If there be no children, or their descendants, father, mother, nor their descendants, or any paternal or maternal kindred capable of inheriting, the whole shall go to the wife or husband of the intestate. If there be no such wife or husband, then the estate shall go to the state."

Sections 2571, 2591, Mansf. Dig. (sections 1859, 1879, Ind. T. St. 1899), are as follows:

"Sec. 2571. A widow shall be endowed of the third part of all the lands whereof her husband was seized of an estate of in-

heritance at any time during the marriage, unless the same shall have been relinquished in legal form."

"Sec. 2591. A widow shall be entitled, as part of her dower, absolutely and in her own right, to one-third part of the personal estate, including cash on hand, bonds, bills, notes, book accounts and evidences of debt whereof the husband died seized or possessed."

It thus appears that under the law of descents and distributions of Arkansas the only interest that the plaintiff, the appellee herein, could recover, would be a one-third interest of the personal estate of her husband, Jeff Nivens, and her dower interest in one-third of his real estate. The appellant, the mother of Jeff Nivens, inherited his estate subject to the appellee's, the wife's, dower. We deem it unnecessary to consider other questions discussed by the briefs of counsel. We are of the opinion that the case should be reversed and remanded, and it is so ordered.

GILL, CLAYTON, and RAYMOND, JJ., concur.