NORTHERN TEXAS REALTY & CON-. STRUCTION CO. v. LARY.†

(Court of Civil Appeals of Texas. April 13, 1911. Rehearing Denied May 4, 1911.)

1. SPECIFIC PERFORMANCE (§§ 6, 10*)—WHEN PROPER—MUTUALITY.

Generally a contract will not be specifically enforced, unless it can be done mutually and completely, and so as to secure substantially all that the parties contemplated at the time of the agreement.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 9–11, 20; Dec. Dig. §§ 6, 10.*]

---

† Writ of error denied by Supreme Court.

**2. VENDOR AND PURCHASER (§ 203\*) — CONTRACTS TO CONVEY—LOSS PENDING CONVEYANCE—LIABILITY.**

Where loss or injury to property contracted to be conveyed is caused by flood, fire, or other inevitable cause, not the vendor's fault, between the date of the contract and the conveyance, the purchaser does not sustain the loss, unless the terms of the contract operated to pass an equitable or beneficial ownership to him.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 421; Dec. Dig. § 203.\*]

**3. VENDOR AND PURCHASER (§ 54\*) — CONTRACTS—CONDITIONS—PERFORMANCE.**

If a contract to convey is at its inception expressly conditional, transfer of an equitable estate occurs on it becoming absolute, through performance of the condition; and, in the absence of condition, the rights and estates under the contract become vested when it is finally concluded, though wholly executory in form.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 85; Dec. Dig. § 54.\*]

**4. SPECIFIC PERFORMANCE (§ 59\*)—CONTRACTS TO CONVEY.**

Ordinarily, though conditions in a contract to convey are conditions precedent to passing an equitable title, upon actual performance of the conditions by the vendor, he has a cause of action for specific performance; but the cause of action is based on the fact that performance of the conditions has passed an equitable estate to the purchaser, and not that the agreement when made did so.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 181; Dec. Dig. § 59.\*]

**5. SPECIFIC PERFORMANCE (§ 59\*)—CONTRACTS ENFORCEABLE—CONDITIONS.**

A contract may be conditional in its inception as to one party and unconditional as to the other, and be valid and enforceable through waiver of performance of a condition that would make it absolute.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 181; Dec. Dig. § 59.\*]

**6. CONTRACTS (§ 161\*)—CONSTRUCTION AS ENTIRETY.**

A contract must be construed as a whole.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 743; Dec. Dig. § 161.\*]

**7. SPECIFIC PERFORMANCE (§ 59\*)—CONTRACT TO CONVEY—RIGHT TO RELIEF.**

A contract to convey was conditional, barring the vendor's right to specific performance on injury to the property through flood, where the contract was made dependent upon conditions to be fulfilled by the vendor, and provided that on nonfulfillment within a time limit the agreement should not be binding.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 181; Dec. Dig. § 59.\*]

**8. VENDOR AND PURCHASER (§ 334\*) — CONTRACT TO CONVEY—RESCISSION—RETURN OF EARNEST MONEY.**

Where a contract to convey was conditional and property was injured by flood before the conveyance, the purchaser was entitled to return of earnest money; the vendor having failed to restore the property to its former condition.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 959–980; Dec. Dig. § 334.\*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Suit for specific performance by the Northern Texas Realty & Construction Company against S. D. Lary. Judgment for defendant, and plaintiff appeals. Affirmed.

Alleging full compliance on its part and refusal of appellee to perform and comply, the appellant brought suit for specific performance of a written contract entered into by them as to purchase and sale of certain houses and lots. Among other defenses by appellee, there was urged as a reason for his refusal to comply with and perform the terms of the contract the happening, on May 21, 1908, and before the time for closing the contract, of an unprecedented flood, causing substantial injury to the lots and houses.

Appellant was the owner of the property, and the contract reads: "(1) That the said party of the first part has this day bargained and sold and by these presents does hereby bargain, sell and obligate himself to convey or cause to be conveyed in manner as hereinbefore stated unto the said party of the second part, all and singular the following described property, to wit: (here follows description). (2) The consideration paid and to be paid to party of the first part by said party of the second part for the property above described is the agreed sum of seven thousand five hundred and 00/100 dollars, to be paid as follows: Cash. (3) This contract is conditioned that the party of the first part will procure and deliver to the party of the second part, at earliest practicable date, a full, complete certified abstract of title to the above-described property, and permit said party to have same examined by his attorneys. If title as shown by the abstract is good and valid, then said first party will make, execute and tender a good and sufficient deed conveying the aforesaid property to party of the second part, with full covenants of general warranty to complete this contract in accordance with its terms and stipulations. If the title to said property as disclosed by the abstract is not shown to be good and valid, then the said party of the second part shall procure and submit to party of the first part a statement in writing of the objections made to said abstract. If said objections are of such character that they can be cured or removed within a period of time not to exceed 30 days, then the said first party shall be obligated and is hereby obligated to so cure or remove said objections at his own expense, and it is hereby agreed and understood that said first party shall have 30 days from and after the date when the written statement of objections is delivered to him within which to cure or remove same. If the title to said property as shown by the abstract is not good, and the objections thereto are not cured or removed by said first party in the manner and within the time hereinbefore stated, then said second party shall have the right to declare this contract at an end and no longer binding on him, and same shall thereupon become null and void, and said second party shall be entitled to the

---

\*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

return of all money paid by him by reason of this agreement. (4) As an evidence of good faith and in earnest of this contract said party of the second part has this day deposited with J. E. Head & Company the sum of three hundred fifty dollars with the express agreement and understanding that if said party of the first part does in fact make and tender to said second party a good and perfect general warranty deed, conveying to said second party the property hereinbefore described, for the price and subject to the terms hereinbefore stated, and does in fact deliver to said second party a complete and duly certified abstract of title to said property, and said abstract and deed is approved by the attorney of the said second party within the time hereinbefore stated, and said second party thereupon fails and refuses to keep and perform the obligations on him imposed by this agreement, then and in that event he shall forfeit to the said first party the aforesaid sum of three hundred dollars as liquidated damages, but if said deed and abstract, or either, is disapproved by said attorney for cause and objections not removed within the time stated, then and in that event the said sum of three hundred fifty dollars shall be by J. E. Head & Company returned to said party on demand, and this contract shall thereupon become null and void. If the abstract and deed is approved by said attorney, then, upon the final completion of this agreement, the said sum of three hundred fifty dollars shall be applied as part of the cash payment for said property as hereinbefore stated. This contract is executed in duplicate and one copy delivered to each of said parties, this the day and year first above written.·

The court made the findings, in effect, that appellant had delivered an abstract of title within the time, and it was by appellee delivered to his attorney, who made a statement in writing of objections to the title, and that the objections were cured on June 20, 1908, and title was then good and sufficient, and appellant had thereafter, before suit, tendered a deed. The court found that an unprecedented flood occurred on May 21, 1908, damaging the property to the extent of $1,025. It does not appear that appellee went into possession of the land. The court made the conclusion of law "that, on account of the injured and damaged condition of the property included in the contract, due to the flood of May 21, 1908, and the failure of plaintiff to restore the property to its same condition as at the time of the making of the contract, the defendant was not required or obligated to carry out the contract, and is entitled to the return of the money deposited by him with plaintiff."

Spoonts, Thompson & Barwise, for appellant. McLean & Carlock and Hart, Mahaffey & Thomas, for appellee.

LEVY, J. (after stating the facts as above). The court concluded that the happening of the unprecedented flood doing substantial injury to the property, between the time of signing the contract and the time of performance of the things appellant obligated itself to do, was sufficient ground for appellee to refuse to consummate the agreement, and denied specific performance. The first assignment assails this conclusion. It can be taken as a fact that the flood was unprecedented, and that substantial injury and loss resulted to the property. The terms of the contract did not make special stipulations as to such loss.

[1] A court of equity generally will not attempt to enforce a contract specifically, unless it can be done mutually and completely, and so as to secure substantially, beyond question, all that the parties contemplated at the time of agreement. And so, if appellee may refuse to consummate the agreement under the circumstances considered, and specific performance be denied, it must be because the property is so impaired and deficient as not, at the time of performance, to be the very same property as was agreed upon that he should receive. But as to whether the loss by flood was available and constituted a defense to performance does not depend merely upon the fact of its happening. It depends further upon the character of contract made. If the terms of the contract operated to make appellee the owner of the property at the time of the loss, then he, as owner, must bear the loss and, nevertheless, perform his agreement. If the terms of the contract did not operate to pass the equitable or beneficial ownership to appellee, then he was not the present owner, and can defend on the loss and change of character of the property.

[2] The rule is that, where loss or injury is occasioned by flood or fire, or other inevitable cause, not arising from the fault of the vendor, occurring between the date of the contract of sale and conveyance, in determining upon whom the loss shall fall, the test is whether the terms of the contract operated to pass the equitable or beneficial ownership to the vendee. 4 Pomeroy, Eq. Jur. § 1406; 6 Pomeroy, Eq. Rem. p. 7; 2 Warvelle on Vendors, § 842.

[3] If the contract is in its inception expressly conditional, then the transfer of the equitable estate takes place on its becoming absolute by the performance of the condition. Pomeroy on Spec. Per. § 319. If the contract is not in its inception expressly conditional, then, quoting from Eq. Jur., supra: "As soon as the contract is finally concluded, although it is wholly executory in form, these rights and estates become fixed and vested." So, by the rules, if the contract by its terms operates to pass in præsenti the equitable or beneficial interest to the purchaser, such purchaser cannot assert the de-

fense of loss of the property, because he was the owner, and must perform the contract. But by the rules, if the contract by its terms is expressly conditional in its inception, and the loss occurs before it has become absolute by the performance of the condition, then the purchaser may refuse to perform because of the loss.

[4] It is contended by appellee that the sale contracted for was a conditional sale, depending upon the doing of certain specific acts by appellant, which were precedent and indispensable to the completion of the contract of sale. It is the contention of appellant that it is a contract of sale complete in all its terms, and is not dependent upon any condition precedent, and operated immediately upon the signing of the agreement to pass the equitable or beneficial ownership to appellee. It is true that ordinarily, even though the conditions were conditions precedent to passing the equitable title to the vendee, upon actual performance of the conditions by the vendor, the vendor would have a cause of action for specific performance. But the right to such action, it must be admitted, is based on the fact that the equitable title was vested in the purchaser by reason of the performance of the conditions precedent by the vendor, and is not based upon the fact that the agreement in its inception operated presently to vest such title. And appellee does not contend that the right to specific performance would exist, unless the equitable title vested in appellee before the flood. It is perhaps correct to say that the terms of the contract operated at once as to appellant, and that it stood bound to undertake to perform from the time of signing the agreement. But, because of other parts of the context, the agreement clearly appears expressly conditional at the inception of the agreement as to appellee. Hence the want of mutuality to presently pass or vest title appears. And, notwithstanding it was conditional as to appellee, he could elect, if he so desired, to waive the conditions. And if he had elected to waive the conditions, and because appellant was bound from the time of signing, appellee, upon tender of the purchase price, might have enforced by suit the execution of the deed.

[5] A contract may be conditional in its inception as to one party and unconditional as to the other, and be valid and enforceable by the waiver of the performance of condition that would make the same absolute. But because appellant was bound from the inception of the agreement it does not follow that it could compel appellee, who was only conditionally bound from the inception, to waive the performance of the conditions precedent and enforce specific performance. By the voluntary waiver, if it had been done, there is a removal of the condition that prevented both parties from at once being bound. But as long as the condition was not waived the agreement was not absolute as to appellee, and during that time so concluded as to be enforceable against him. And, because of the condition present, passing of title was not existent between the parties, nor before the time of performance of such condition.

[6] In construing the character of contract, the instrument must be considered as a whole, and not from any one clause alone. In paragraph 1 the parties say: "The said party of the first part (appellant) has this day bargained and sold and by these presents does hereby bargain, sell and obligate himself to convey or cause to be conveyed in manner as hereinbefore stated unto the said party of the second part (appellee) all and singular the following described property." In paragraph 2 the consideration paid and to be paid is recited as $7,500, cash. So far, upon its face, the agreement has the force and import of a grant of the land from the time of the agreement, and no conditions but the mere payment of money and execution of deed. But in paragraph 3 the parties say that the agreement is a contract conditioned upon the appellant's doing certain things specifically set out, and the time for the doing is prescribed by fixed limitation, with forfeiture of the entire contract for failure to do within the prescribed time. The certain things to be done by appellant were to deliver at the earliest date practicable a full and complete certified abstract of title to the land, and appellee was to have time for his attorney to examine same. If the title, as shown by the abstract, was good and valid, a warranty deed was to be executed. And according to the language a deed, under such circumstances, with covenants of general warranty, was required "to complete this contract in accordance with its terms and stipulations." On the other hand, if the title to the property as disclosed by the abstract, was not shown to be good and valid under legal advice, then appellee was to submit in writing to appellant the objections made to the abstract. And it was agreed that, if the objections made were "of such character that they can be cured or removed within a period of time not to exceed 30 days," then appellant was to so cure or remove the objections at its own expense. But, it was agreed, "if the title to said property as shown by the abstract is not good, and the objections thereto are not removed by the party of the first part in the manner and within the time hereinbefore stated, then the said party of the second part shall have the right to declare this contract at an end and no longer binding on him, and same shall thereupon become null and void, and said party shall be entitled to the return of all money paid by him by reason of this agreement." By this it would appear that there was no presently concluded agreement of sale and purchase, but the finality of the same depended on a condition precedent, and until the performance by appellant

of the things embodied in the condition the intention of the parties appears expressed in the language that appellee "shall have the right to declare this contract at an end and no longer binding on him, and same shall thereupon become null and void." The very essence of the undertaking was that until the conditions imposed were performed there was not to be a purchase by appellee, and there was not to be a binding contract until then. Suppose that appellant on the next day after signing the agreement, and refusing to perform its conditions, had chosen to sell the land to another, could the appellee have maintained a suit on this contract against such purchaser to recover the land? If not, and his remedy was against appellant for damages, it is because the equitable title had not passed to the appellee at the time of such conveyance to such purchaser.

[7] In view of the expressed provision in the contract that it was to be dependent upon certain conditions, to be thereafter fulfilled by appellant, and its express provision that if the conditions should not be fulfilled by appellant, and within the time limit prescribed, the agreement should not be of binding force, it cannot be said, we think, that the contract in its inception was not made expressly conditional. If it were expressly conditional in its inception, as we think it must be said, then under the settled rule specific performance here could not be predicated, because the equitable interest or estate of the parties was not so fixed at the time of signing the agreement as to give appellee an equitable title and right to possession, but depended upon the happening of the condition thereafter, which rendered the contract absolute. As long as the contract was conditional, the estate in the subject-matter and right to possession did not pass to the vendee, but remained in the vendor. As long as the estate remained in the vendor, the subject-matter of the agreement continued to be at his risk of loss by flood. The facts show that appellant delivered the abstract to appellee on May 19th, and it was returned with the objections which appellee's attorney made to the title of the property. The objections were delivered to appellant on May 23d. On May 21st the extraordinary overflow occurred which damaged the property, but it was not known to the appellee until the objections to the title had been cured by appellant. On June 20th appellant returned the abstract, with the objections removed.

Appellant cites, among others, and relies on the following cases: Neyland v. Ward, 22 Tex. Civ. App. 369, 54 S. W. 604; Martin v. Carvers (Ky.) 1 S. W. 199; Marks v. Tichenor, 85 Ky. 536, 4 S. W. 225; and Brewer v. Herbert, 30 Md. 301, 96 Am. Dec. 582. We do not think the cases rule the point here. The instrument in the case of Rountree v. Thompson, 30 Tex. Civ. App. 595, 71 S. W. 574, 72 S. W. 69, was construed to be a conveyance at its inception of the legal title. The instrument in Baker v. Westcott, 73 Tex. 129, 11 S. W. 157, vested the title immediately. A bond for title to land, or a conveyance with reservation of legal title until the payment of the purchase-money, each vest the equitable title in the vendee upon the execution and delivery of the bond or conveyance. There is no further thing to be done by the vendor until the payment of all the purchase-money contracted for. The contract of sale is complete in all its terms, and is dependent upon no condition precedent. But the instant case is not one of that character. Here, by the terms of the agreement, there was no conversion of the title and no vesting in the appellee of an equitable or beneficial title pending the time between the signing of the agreement and the performance of the conditions by the vendor.

[8] The second assignment relates to the action of the court in giving appellee judgment for the $350, deposited with appellant as earnest money to bind the contract. Under the findings of the court and the terms of the agreement, there was no error. If title to the property did not vest in appellee at the time the agreement was signed, and had not vested at the time of the flood, as it had not, then a plain duty devolved upon appellant, before he could demand the purchase money or the deposit as damages, to restore the property to the condition it was in at the time the agreement was made.

The case was ordered affirmed.