## FINLEY v. THOMPSON et al. (JACKSON et al., Interpleaders).

No. 8552—Opinion Filed June 11, 1918.

(174 Pac. 535.)

(Syllabus.)

**1. Indians — Allotment — Inheritance — Ancestral Estate—Statute.**

N. B., enrolled as a quarter-blood Chickasaw Indian, died in infancy prior to statehood without descendants after receiving his allotment, leaving surviving him his father, F. B., also enrolled as a Chickasaw, and a sister, L. B., not enrolled, his mother, A. B., enrolled as a Choctaw, having previously died. Subsequent to his death L. B. also died in infancy without descendants, leaving, surviving her her father F. B., her maternal grandfather, Y. J., a negro, enrolled as a Choctaw freedman, S. J., a negro half-sister of her mother, and B. F., her great-uncle, a full-blood Choctaw. Held: (1) That the allotment of N. B. was an ancestral estate which came to him through the blood of his tribal parents, and as much through the blood of the mother as the father; (2) that upon the death of N. B. without descendants, his allotment ascended to his father, F. B., and his sister, L. B., in equal parts; (3) that the part of said allotment inherited by L. B. was an ancestral estate which came to her through the blood of her mother; (4) that upon the death of L. B. without descendants, this part of the allotment ascended to Y. J. and S. J., the next of kin of her mother, notwithstanding their negro blood, and not to B. F., her more remote kinsman of Choctaw blood.

**2. Indians — Tribal Marriage—Validity—Power of Courts.**

Act Cong. June 28, 1898, c. 517, § 26, 30 Stat. 504, provides; "That on and after the passage of this act the laws of the various tribes or nations of Indians shall not be enforced at law or in equity by the courts of the United States in the Indian Territory." Held, that since the enforcement of this section neither the courts of the state nor of the United States are available for the purpose of declaring a marriage void for no other reason than that it was violative

of a tribal law of the Choctaw Nation at the time it was solemnized.

Error from District Court, Johnston County; J. H. Linebaugh, Judge.

Action by Ben Finley against W. J. Thompson and others, in which Yock Jackson and another by order of court filed an interplea. Judgment for defendants, and plaintiff brings error, and the interpleaders bring a cross-petition in error. Reversed and cause remanded, with directions.

Geo. A. Fooshee and D. D. Brunson, for plaintiff in error.

H. A. Ledbetter, F. M. Adams, and John A. McClure, for defendants in error.

Jas. R. Wood, for interpleaders.

KANE, J. This was a controversy, involving the devolution of the allotment of Nicholas Bean, enrolled as a quarter-blood Chickasaw Indian, who died in infancy after receiving his allotment, leaving surviving him his father, Felin Bean, who was enrolled as a half-blood Chickasaw Indian, and a sister, Lillian Bean; his mother, Abby Bean, nee Jackson, enrolled as a half-blood Choctaw Indian, having previously died. Subsequent to the death of Nicholas Bean, Lillian Bean, his sister, also died in infancy, leaving no descendants. The defendants claim title through conveyances by Felin Bean, the father, and his grantee, executed subsequent to the death of Lillian Bean. The plaintiff in error, Ben Finley, as plaintiff below, commenced this action to cancel these conveyances. Ben Finley, the plaintiff, is a full-blood Choctaw, was the uncle of Abby Bean, and the great-uncle of Nicholas Bean and Lillian Bean. It was his contention that at the death of Nicholas Bean, one-half of his allotment ascended to his father, Felin Bean, and the other half went to his sister, Lillian Bean, and that at the death of Lillian Bean without descendants half of the allotment which came to her ascended through the Choctaw blood of the mother and vested in Ben Finley, he being the only surviving kinsman of Abby Bean. Yock Jackson and Sylvia Jackson, by order of court, filed an interplea, and were styled "interpleaders" in the court below. Yock Jackson, who was a negro enrolled as a Choctaw freedman, alleged that he was the father of Abby Bean, nee Jackson, and the maternal grandfather of Nicholas Bean and Lillian Bean. Sylvia Jackson alleged that she was the only surviving child of Yock Jackson and a half-sister to Abby Bean, nee Jackson. Yock Jackson and Sylvia Jackson contend that inasmuch as they are the next of kin of Abby Bean, the interest in the allotment of Nicholas Bean which passed to Lillian Bean upon his death ascended to them upon the death of the latter without descendants. On behalf of the defendants it is contended: (1) That inasmuch as Nicholas Bean was enrolled as a Chickasaw Indian, taking the enrollment blood of his father, Felin Bean, it must be held that his allotment came to him by his father, and therefore upon his death the entire estate immediately ascended to Felin Bean, the grantor of the defendants; (2) but if the foregoing contention is found to be untenable, Nicholas Bean being enrolled as a Chickasaw Indian, at his death one-half of his allotment went to Felin Bean and the other half to Lillian Bean, and at the death of Lillian Bean without descendants the half of the allotment that went to her ascended to Felin Bean. In either of these events Felin Bean had a right to convey the entire estate to the defendants. The trial court took the view:

"That upon the death of Nicholas Bean the land sued for in this action ascended to his father, Felin Bean, and his sister, Lillian Bean, and upon the death of Lillian the whole of said title vested in said Felin Bean"

—and entered judgment in favor of the defendants, to reverse which this proceeding in error was commenced by Ben Finley as plaintiff in error, and Yock Jackson and Sylvia Jackson, as interpleaders and cross-petitioners in error.

It is agreed between counsel for the respective parties that the devolution of the land in controversy is governed by chapter 49, Mansfield's Digest of the Laws of Arkansas, in force in the Indian Territory prior to statehood, and that the controlling part thereof is section 2531, which provides:

"In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition it shall ascend to the father for his lifetime, and then descend, in remainder, to the collateral kindred of the intestate in the manner provided in this act; and, in default of a father, then to the mother, for her lifetime; then to descend to the collateral heirs as before provided."

It is also conceded that the allotment of Nicholas Bean was an ancestral estate, and that its devolution is governed by the principles announced in Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615; Pigeon v. Buck, 38 Okla. 101, 131 Pac. 1083; Id., 237 U. S. 386, 35 Sup. Ct. 608, 59 L. Ed. 1007; Mc-

Dougal v. McKay, 237 U. S. 372, 35 Sup. Ct. 605, 59 L. Ed. 1001; Id., 43 Okla. 251, 142 Pac. 987.

With these preliminary questions taken as settled and out of the way, we will now proceed to examine the contentions of the respective parties.

If we understand the defendants' first contention, it amounts to this: Inasmuch as Nicholas Bean was enrolled as a Chickasaw, the tribal blood of his father, it must be held that his allotment came to him by his father, and therefore, upon the death of Nicholas without descendants, the land ascended to his father and his heirs, to the exclusion of his Choctaw mother and her heirs. We are unable to agree with this proposition. In Kelly v. McGuire, 15 Ark. 555, where section 2531, supra, was fully considered, it was held that:

"The manifest intention of the first part of this section, was to preserve ancestral estates in the line of the blood from whence they came."

This, no doubt, is a correct statement of the purpose of the section; but, in our judgment, it does not support the contention that the intention of the statute, when applied to Indian allotments, was to preserve the allotment in the line of any particular strain of Indian blood. In Thorn v. Cone et al., 47 Okla. 781, 150 Pac. 701, where the deceased allottees and their parents were all members of the Seminole Tribe of Indians, it was held that the allottees acquired the right to their allotments by their membership in the Seminole Tribe, and that, their father and mother being full-blood Seminoles, their allotments came to them through the blood of their tribal parents, and as much through the blood of one as the other.

In the case at bar, Nicholas Bean, by virtue of his mixed blood, had the right to acquire an allotment either as a Choctaw or a Chickasaw Indian. By the laws and treaties governing the disposition of tribal lands in the Choctaw and Chickasaw Nations, where the allottee had a Choctaw father and a Chickasaw mother, or vice versa, he was at liberty to select the tribe in which he wished to be enrolled. It is common knowledge that where the allottee was a minor, as in the case at bar, it was the practice for the father and mother to select the tribe in which the minor allottee was to be enrolled, and it was not uncommon, where there were several children, to find some of them enrolled as Choctaws, and the balance as Chickasaws, according to the

will of the parents. In these circumstances, the right to take an allotment was the birthright of the allottee. It came to him through his tribal parents, and as much through the blood of one as the other. It seems to us that to hold that the mere matter of enrollment and selection of the allotment in the one tribe or the other determines the line of its devolution, where the allottee dies without descendants, would give to the statute a meaning it was never intended to have.

Having reached this conclusion, it would follow that, upon the death of Nicholas Bean, without descendants, his allotment ascended equally to his father and to the heirs of his mother; that is, one-half to the surviving father, Felin Bean, and one-half to the surviving sister, Lillian Bean. That the part of the allotment inherited by Lillian continued to be an ancestral estate which came to her by her mother notwithstanding the previous death of the latter finds support in Kelly v. McGuire, supra, and West et al. v. Williams, 15 Ark. 692, which hold that ancestral estates embrace, not only descended estates, but also all others which may have come to the intestate by gift or devise from either parent or from any relative of the blood of either parent.

Further, following by analogy Thorn v. Cone and the other cases cited above, we are led to the conclusion that, upon the death of Lillian Bean without descendants, the land in controversy having come to her by her mother, within the meaning of the statute, it ascended to the heirs of her deceased mother. The question therefore arises, Who are the heirs of Abby Bean, deceased? The plaintiff, Ben Finley, concedes that Yock Jackson and Sylvia Jackson, the father and half-sister, respectively, of Abby Bean, are her nearest of kin, and would inherit the interest of Lillian Bean in the land in controversy except for the following circumstances: (1) Yock and Sylvia Jackson being negro freedmen, the inheritance passed them by and vested in Ben Finley, who is the nearest relation of Abby Bean possessing Choctaw blood; (2) that the marriage of Yock Jackson, a negro, and Sibbey Jackson, the mother of Abby Bean, and a full-blood Choctaw, was void for the reason that at the date of its solemnization, some time during the year 1881, there was in force in the Choctaw Nation the following statute:

"Be it enacted by the general council of the Choctaw Nation assembled:

"It shall not be lawful for a Choctaw and negro to marry; and if a Choctaw man or woman should marry a negro man or woman, he or she shall be deemed guilty of a felony, and shall be proceeded against in the circuit court of the Choctaw Nation having jurisdiction the same as all other felonies are proceeded against; and if proven guilty shall receive fifty lashes on the bare back."

A question similar to the first contention of counsel was considered by this court and decided adversely to the same plaintiff in Ben Finley v. American Trust Co., 51 Okla. 489, 151 Pac. 865. In that case the devolution of the allotment of Abby Bean, the mother of Nicholas and Lillian Bean, was involved. It was conceded that the allotment was an ancestral estate, and that it came to Nicholas and Lillian by their mother, and that upon the death of Nicholas and Lillian it ascended to the heirs of the mother. Ben Finley, the plaintiff herein, was also plaintiff in that case, and contended, as in this case, that, being the nearest relation of the deceased allottee of Choctaw blood, he was entitled to inherit the allotment of their deceased Choctaw mother to the exclusion of their nearer relations of negro blood. The court held:

"Where an allottee of the Choctaw Tribe of Indians enrolled as a half-blood died in December, 1906, intestate, leaving surviving her two children, aged, respectively, 18 and 11 months, and a husband who was not a member of the tribe, her allotment descended, subject to the right of the husband by curtesy consummate, to said children in equal parts. Upon the death of one of said children, on May 9, 1907, his moiety was inherited by the other. Upon the death of the last child, on May 26, 1907, its estate in said allotment, being ancestral, ascended in the maternal line, whence it came, and passed to the nearest of kin to said child who were of the blood of its mother regardless of the fact that such persons were not members of the tribe (applying sections 2522 and 2531, Mansfield's Digest of the Laws of Arkansas)."

A sufficient answer to the second contention of counsel, it seems to us, is that the Choctaw statute invoked has long since become absolute and unenforceable. Section 26 of the act of Congress of June 28, 1898 (30 Stat. at L. 504) provides:

"That on and after the passage of this act the laws of the various tribes or nations of Indians shall not be enforced at law or in equity by the courts of the United States in the Indian Territory."

As these statutes were never enforceable by the courts of the state and the courts of the United States are prohibited from enforcing them, it would seem that the plaintiff is without a tribunal wherein a marriage may be declared void for no other reason than that it was violative of a tribal law of the Choctaw Nation at the time it was solemnized. McAllaster v. Edgerton, 3 Ind. T. 712, 64 S. W. 585; George v. Robb, 4 Ind. T. 1, 64 S. W. 615; Nivens v. Nivens, 4 Ind. T. 30, 64 S. W. 601.

Having reached the conclusion that there is no impediment in the way of the Jacksons inheriting the land in controversy, we will assume that their counsel is correct in his contention, which is not disputed by the other parties, that each takes an undivided half interest thereof, pursuant to the third subdivision of section 2522, Mansf. Dig. Ark., which provides:

"If there be no children, nor their descendants, father, mother, brothers or sisters, nor their descendants, then to the grandfather, grandmother, uncles and aunts and their descendants, in equal parts, and so on in other cases, without end, passing to the nearest lineal ancestor, and their children and their descendents, in equal parts."

The only question remaining for consideration is the further contention of the defendants, to the effect that, even if it is found that Yock Jackson inherited any portion of the land in controversy, he subsequently conveyed the same to the defendants by deed, and the counter contention by Yock Jackson that such deed was procured by fraud. This being purely a question of fact, we would not ordinarily disturb the finding of the trial court in favor of the defendants. But as gross inadequacy of consideration for the deed was one of the elements relied upon to establish fraud, it is probable that the trial court may have been influenced in his findings on this point by his erroneous view of the law that Yock Jackson inherited no part of the land involved, and hence had nothing to convey. In these circumstances, we think a new trial should be granted on this question alone.

For the reasons stated, the judgment of the court below is reversed and the cause remanded, with directions to the trial court to proceed in accordance with the views herein expressed.

All the Justices concur.