## In re LEWIS' ESTATE. SCOTT et al. v. WESLEY.

No. 12268—Opinion Filed Sept. 16, 1924.

**1. Indians—Action to Determine Heirship— Effect of Prior Administration Proceedings.**

The act of Congress of 1918, specifically authorizing the determination of heirship of deceased Indians and conferring jurisdiction upon the county courts to determine same, authorizes the filing of a petition for such purpose, and the adjudication of same in all cases where the question of heirship has not been formerly adjudicated by a court of competent jurisdiction, and the fact that the estate has been administered upon, or administration proceedings are then pending, does not deprive the court of jurisdiction to hear and determine the question, unless there has been a former adjudication thereof.

### 2. Descent and Distribution—Ancestral Estates—Law of Arkansas.

Under the law of descent and distribution, Mansfield's Digest of the Laws of Arkansas, if the inheritance was ancestral and came from the father's side, then it will go to the line on the part of the father from whence it came, not in postponement, but in exclusion of the mother's line, and so, on the other hand, if it comes from the mother's side, then to the line on the part of the mother from whence it came, to the exclusion of the father's line. (Kelly v. McGuire, 15 Ark. 555.)

### 3. Indians—Devolution of Allotments.

William Lewis, full-blood Choctaw Indian, died intestate in 1903, leaving him surviving his wife, Phoebe Lewis, and one child, Sarlin Lewis; held, that the allotment of William Lewis descended to his son, Sarlin Lewis, subject to the widow's dower, as provided in chapter 49, Mansf. Dig. of the Stats. of Ark. Sarlin Lewis died in 1904, and the mother, Phoebe Lewis, died in 1914, and under the same law the allotment in the hands of Sarlin Lewis was an ancestral inheritance and ascended to his father's side, the line from which it came, and the father being dead, and having acquired the original allotment by reason of his membership in the Choctaw Tribe of Indians, and his parents both being members of the tribe by blood, he acquired his right to an allotment as much through the blood of one parent as the other and such allotment descended equally to the paternal and maternal heirs of the father, William Lewis, deceased.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Atoka County; J. H. Linebaugh, Judge.

In the matter of determination of heirs of William Lewis, deceased, on petition of Sealey Wesley, whose claim to heirship was contested by J. M. Scott and W. W. Corbin. Judgment for Lewis, and Scott and Corbin bring error. Affirmed.

Walter & Hilprit and Gordon Freyer, for plaintiffs in eror.

Hatchett & Semple and J. H. Gernert, for defendant in error.

Opinion by JONES, C. This suit was originally instituted in the county court of Atoka county, Okla., by Sealey Wesley, a member of the Choctaw Tribe of Indians by blood, on the 1st day of March, 1919, on application therein to determine the heirs of one William Lewis, deceased, a full-blood Choctaw Indian.

The said Sealey claimed to be an heir of William Lewis, deceased, and entitled to an undivided one-half interest in his allotment.

J. M. Scott and W. W. Corbin, the holders of the record title to said lands and who secured their title through deeds from the half-brothers and sister of William Lewis, deceased, appeared in the action and contested the claim of heirship of said Sealey Wesley to any interest in said estate or lands. On December 31, 1919, the matter was tried and a decree rendered determining the heirs of the said William Lewis, deceased, in which it was held that the petitioner, Sealey Wesley, was entitled to a one-half interest therein by inheritance, from which order and judgment of the court the plaintiff in error appealed to the district court of Atoka county, Okla., and there submitted the case on an agreed statement of facts, which is as follows:

"In the district court, state of Oklahoma, Atoka county. In the matter of the determination of the heirs of William Lewis, deceased, Choctaw by blood, Roll No. 11, 839, No. 1439.

"Stipulation.

"It is hereby stipulated and agreed, by and between Hatchett and Semple and J. H. Gernert, representing Sealey Wesley, and Gordon Freyer, representing James Scott and W. W. Corbin, that this cause may be submitted on the following statement of facts:

"That William Lewis was a duly enrolled member of the Choctaw Tribe of Indians, whose roll number is 11,839, and there was allotted to him the following described land, to wit: the S. E. ¼, the N. E. ¼ of the S. E. ¼ of S. W. ¼ of sec. 13, township 1 south, range 5 east, 170 a.; the N. E. ¼ of section 24; the S. E. ¼ of the S. E. ¼ of S. W. ¼ of section 13, township 1 south, range 5 east, 170 a.

"That said William Lewis died intestate on or about the 15th day of April, 1903, in which is now Atoka county, Okla., leaving surviving one child, to wit: Sarlin Lewis, and his wife, Phoebe Lewis, and leaving no other child or issue of deceased children; that said Sarlin Lewis died in infancy in the year 1904, being about three years of age; that Phoebe Lewis died on or about the 26th day of May, 1914; that said William Lewis was a full-blood Choctaw Indian, whose parents were each Choctaw Indians, the father of William Lewis, being Joslin Lewis, and the mother, Rhoda Lewis, and that both of said persons died prior to the date of the death of William Lewis, that said William Lewis had paternal relatives living at his death, as follows: Eliza Lewis, paternal half-sister; Sampson Lewis, paternal half-brother and John Lewis, paternal half-brother. That said William Lewis had as his nearest and only maternal

relative, Sealey Wesley, who was the child of Joseph Wesley, the said Joseph Wesley having been the son of Edna Wesley, making a full sister of Rhoda Lewis, mother of William Lewis, making the said Sealey Wesley a maternal second cousin of the said William Lewis, deceased, and that all of said relatives were also living at the date of the death of the said Sarlin Lewis named herein.

"Witness our hands this 27th day of October, A. D. 1920.

"J. H. Gernert & Hatchett & Semple,

"Gordon Freyer for J. W. Scott."

And on this statement of facts the district court on the 12th day of November, 1920, rendered a final judgment affirming the judgment of the county court, finding the said Sealey Wesley to be an heir of William Lewis, deceased, and entitled to inherit an undivided one-half interest in the allotment of the said William Lewis, deceased. The facts as disclosed by the agreed statement of facts and the law as contended for and relied upon by both plaintiff in error and defendant in error resolve the principal question in controversy to that of whether or not Sealey Wesley, she being admitted to be a second cousin on the maternal side of the family of William Lewis, deceased, is entitled to participate in the estate as an heir of said deceased. It is agreed that William Lewis died intestate on the 15th day of April, 1903, leaving surviving one child, Sarlin Lewis, and his wife, Phoebe Lewis and that the said Sarlin Lewis died in infancy in 1904 being about three years of age, and that Phoebe Lewis died about the 26th day of May, 1914, and that the parents of William Lewis, deceased, are full-blood Choctaw Indians, both of whom died prior to the death of William Lewis. That William Lewis had paternal relatives living at his death as follows: Eliza Lewis, paternal half-sister; and Sampson and John Lewis, paternal half-brothers, and that Sealey Wesley was a relative on the maternal side, being the second cousin of said William Lewis, deceased, and it is agreed by both plaintiff and defendant in error that the laws of Arkansas control, and that the lands or allotment of said William Lewis, deceased, descended in accordance therewith. Section 2531, ch. 49, Mansf. Digest of the Laws of Arkansas, which was in full force and effect at the time of the death of William Lewis and his child, Sarlin Lewis, is as follows:

"Section 2531: In cases where the intestate shall die without descendants, if the estate come by the father then it shall as-

cend to the father and his heirs; if by the mother, the estate or so much thereof as came by the mother, shall ascend to the mother and her heirs. But if the estate be a new acquisition it shall ascend to the father for his lifetime, and then descend, in remainder to the collateral kindred of the intestate in the manner provided by this act; and in default of a father, then to the mother, for her life time, then to descend to the collateral heirs as before provided."

Section 2532 reads as follows:

"The estate of an intestate, in default of father and mother, shall go first to the brothers and sisters, and their descendants, of the father: next to the brothers and sisters and their descendants of the mother; this provision applies only where there are no kindred either lineal, or collateral, who stand in a nearer relation."

Section 2433 provides:

"Relations of the half-blood shall inherit equally with those of the whole blood in the same degree."

We think under these statutes the estate, being originally the individual allotment of William Lewis, deceased. went to his child, Sarlin Lewis, subject to the widow's dower, and at the death of Sarlin Lewis it went back to the line from whence it came, it being so far as Sarlin Lewis is concerned an ancestral estate coming from the father, and the father, being a full-blood Choctaw Indian and likewise his parents, we think in keeping with the rule announced in case of Thorn v. Cone, 47 Okla. 781, 150 Pac. 701, wherein the court held that there can be no propositus from whom to trace succession in dealing with Indian allotments, but the court held an individual allotment of a full-blood allottee comes as much by the blood of the mother as by the blood of the father, and further held in that case that a one-half interest ascended to the father and that a one-half interest ascended to the mother. The parent and grandparents being dead, the estate would descend in equal parts to the heirs of each. This we think is in keeping with the rule as announced in the case of Kelley v. McGuire. 15 Ark. 555, which is a leading authority on the question of descent and distribution under the Arkansas statutes. The court said in speaking of the devolution of the estate of the deceased, that:

'Of these he left him surviving, a grandfather, Greenberry Kelly, and the descendant- of an only paternal aunt, Mary Eickelburner, and these descendants, together, by the right of representation, were entitled to share the inheritance equally with the grand-

father under the general provisions made in the first section of the statute. And the grand father having died after succeeding to this inheritance, these same descendants, of his daughter, Mrs. Eickelburner, as his lineal descendants, took the inheritance from him as his heirs of the blood of Charles Kelly, the first and last purchaser of the estate; and are, therefore, entitled to the entire real estate that descended from Charles to Clinton Kelly."

In the case of Thorn v. Cone, supra, the court said:

"Viewing the matter in this light we conclude that Sissy and Lena Jefferson acquired their right to the land in question by their membership in the Seminole Tribe of Indians. That their allotment came to them by the blood of their tribal parents and both being full-blood Seminole Indians, as much by the father as by the mother, that in such circumstances the allottees dying intestate and without descendants their allotments ascend equally to the father and his heirs and the mother and her heirs."

—and also that:

"The primary allotment of an enrolled full-blood Seminole Indian, who died intestate and without descendants after having received her allotment, must be considered as an ancestral estate, within the meaning of section 2531, ch. 49, Mansf. Dig. Laws Ark., extended over and put in force in the Seminole Nation by act of Congress."

Applying this rule to the case at bar, on the death of Sarlin Lewis the estate ascends back to the line from whence it came, the father, William Lewis, and then would descend to his heirs both paternal and maternal, the estate being originally his allotment, which he acquired by reason of his citizenship in the Choctaw Tribe of Indians. His allotment came to him by reason of the blood of his tribal parents both of whom were full-blood Choctaws. And under that rule, the judgment of the court on that question is evidently correct, and while there is no specific statute which we know of that provides such a rule it is the only logical and reasonable construction that can be applicable to Indian allotments.

Another question raised by the assignment of error and urged by the plaintiff in error is that the county court, wherein this case was originally instituted, had no jurisdiction to determine heirship for the reason that an administration proceedings had been brought some years prior to the institution of this suit.

The record does not disclose whether the administration proceedings had been closed or was still pending. But we cannot agree with this contention. An act of Congress of June 14, 1918, giving the probate court of the state of Oklahoma jurisdiction to determine heirship of deceased Indians, reads as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled, that a determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or who may have heretofore died, leaving restricted heirs, by the probate court of the state of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said state for the determination of heirship in closing up the estates of deceased persons, shall be conclusive of said question: Provided, that an appeal may be taken in the manner and to the court provided by law, in cases of appeal in probate matters generally; Provided further, that where the time limited by the law of said state for the institution of administration proceedings has elapsed without their institution, as well as in cases where there exist no lawful grounds for the institution of administration proceedings in said courts, a petition may be filed therein having for its object the determination of such heirship and the case shall proceed in all respects as if administration proceedings upon other proper grounds had been regularly begun, but this proviso shall not be construed to reopen the question of the determination of an heirship already ascertained by competent legal authority under existing laws."

If in fact the administration proceeding was still pending the petition to determine heirship as authorized under the federal act could have been properly filed in the administration suit, but in fact, and we assume it to be a fact, there had been no adjudication of the question of heirship in the administration proceedings, and the fact that the petition asking for the determination of heirship was filed in a new and different suit from the original administration proceedings would not deprive the court of jurisdiction to hear and determine that question. We think the material portion of the proviso referred to by the plaintiff in error is to the effect that no adjudication of heirship

should be had where the question has already been determined and adjudicated by a court of competent jurisdiction. This would be true even though the Federal Act had made no such provisions. Congress could not enact a law that would set aside or invalidate a judgment of the state courts of competent jurisdiction. And in view of the fact that the question of heirship had never been determined in this case, we think clearly that the court was authorized to entertain a petition and adjudicate the question. Plaintiff in error cites the case of Homer v. Lester et al., 95 Okla. 284, 219 Pac. 392, as an authority supporting his contention as to the lack of jurisdiction, but we do not understand that to be the rule announced in that case. The defendant in error admits that the rule announced in the Homer-Lester Case determines the fact that the court has no jurisdiction to render judgment or an order as to the title or to dispossess purchasers of the land, and we think this a correct rule as we understand the law; probate courts have no jurisdiction in ejectment suits to acquire possession or remove cloud from title, and hence in passing on the question of heirship can determine that question alone, and if the estate or any portion of it has been conveyed by a part of the heirs, then those who are determined and adjudicated to be legal heirs and such heirs as are entitled to participate in the distribution of the estate, they we think would necessarily have to institute proper proceedings in a court of competent jurisdiction to enforce their rights.

The judgment of the court appealed from provides:

"It is therefore ordered, decreed and adjudged that the decree of the county court rendered in this case be and the same is hereby affirmed and interest of said parties is affixed as follows: Sealey Wesley inherited an undivided one-half interest; John Lewis an undivided one-sixth interest; Emily LeFlore and Thorne LeFlore, an undivided one-sixth interest jointly; Joseph Lewis, an undivided one-sixth interest.

"It is further ordered that the cost of this action be taxed against defendants herein, James Scott and W. W. Corbin."

From this we do not understand that the court was attempting to render a judgment that would dispossess Scott and Corbin, who seem to hold the record title to the land involved in the estate. The only affirmative judgment against them is for cost.

The cost ordinarily in cases to determine heirship, we think, should be taxed against the estate, but in view of the fact that Scott and Corbin appear as defendants and defend apparently in the interest of the heirs from whom they purchase, we think no grave injustice is done by taxing the cost against them, they evidently being in possession of the estate and receiving the benefits thereof. We therefore recommend that the case be affirmed in so far as the question of heirship is concerned and that of cost.

By the Court: It is so ordered.