## THORN v. CONE *et al.*

No. 3882.   Opinion Filed July 13, 1915.

(150 Pac. 701.)

1. **INDIANS—Ancestral Estate—Indian Allotment.** The · primary allotment of an enrolled fullblood Seminole Indian, who died intestate and without descendants after having received her allotment, must be considered as an ancestral estate, within the mean-. ing of section 2531, c. 49, Mansf. Dig. Laws Ark., extended over and put in force in the Seminole Nation by act of Congress.

2. **SAME—Descent and Distribution.** Sissie and Lena Jefferson, ' full-blood Seminole Indians, died intestate without descendants, after having received their allotments, on the 12th day of February, 1903, .and the 20th day of July, 1904, respectively. **Held,** that the devolution of their allotments is governed by the applicable provisions of chapter 49, Mansf. Dig. Laws Ark. **Held,** · further, said decedents acquired the right to their allotments by . their membership in the Seminole Tribe of Indians; that, their father and mother being full-blood Seminole Indians, their allotments came to them through the' blood of their tribal parents, and as much through the 'blood of one as the other; that by virtue of that part of section 2531 of said chapter 49 which provides: "In cases where the intestate shall die without descendants, if the estate came by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs" —said allotments ascended equally to the father and mother of said decedents and to their heirs.

(Syllabus by the Court.)

*Error from District Court, Seminole County;*
*Tom D. McKeown, Judge.*

Action between J. R. Thorn and H. L. Cone and others. From the judgment, Thorn brings error. Reversed and remanded, with directions.

*Willmott & Dean,* for plaintiff in error.

*Crump, Fowler & Skinner,* for defendants in error.

KANE, C. J.   This is a controversy between the maternal and paternal kinsmen of Sissie and Lena Jefferson, two full-blood Seminole Indian allottees, who died

intestate and without descendants on the 12th day of February, 1903, and the 20th day of July, 1904, respectively, over the devolution of their allotted lands. Upon trial to the court the controversy was decided below in favor of the maternal relations of the decedents, whereupon the paternal relations filed this proceeding in error in the Supreme Court.

The contention of the prevailing parties is stated by their counsel in their brief as follows:

"Our position on the merits of the case is that Sissie Jefferson and Lena Jefferson were enrolled as Seminole citizens for the purpose of allotment, because of the fact that their mother was a Seminole; that because of the fact that the father happened to be a Seminole gave them no status or rights as Seminole citizens, but that they were Seminoles solely because their mother was a Seminole, and for no other reason; that this rule was adopted and followed by the Dawes Commission in preparing the rolls of the Seminoles for allotment; that the rolls so prepared were the rolls upon which allotment of the Seminoles was made; that the Arkansas law of descent was in force at the time of the deaths of these two allottees. Such being the case, applying the rule laid down in the *Shulthis Case*, 170 Fed. 529 [95 C. C. A. 615], the allotment of a child dying without issue or spouse, as in the case at bar, was in the nature of a maternal ancestral estate, and descended to the maternal heirs of the deceased allottees, to the exclusion of the paternal line. Thefeore, Sam Harjo being the only heir in the maternal line, he inherited said allotments in fee simple."

The question for review involves an application to the foregoing facts of that part of section 2531 of chapter 49, Mansf. Dig. Laws Ark., which provides:

"In cases where the intestate shall die without descendants, if the estate came by the father, then it shall ascend to the father and his heirs; if by the mather, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs."

As we gather the views of counsel from the foregoing excerpt from their brief, they concede the allotments of the decedents were ancestral estates, and that their devolution is governed by the applicable laws of descent and distribution of the state of Arkansas (*Heliker Jarvis Seminole Co. v. Peter Lincoln*, 33 Okla. 425, 126 Pac. 723) ; but they contend that by force of a certain custom peculiar to the Seminoles such estates come by the mother, and therefore should ascend to the mother and her heirs.

A similar question seems to have been settled contrary to the contention of counsel in *Pigeon v. Buck*, 38 Okla. 101, 131 Pac. 1083, Id., 237 U. S. 386, 35 Sup. Ct. 608, 59 L. Ed. 1007, and *Roberts v. Underwood*, 38 Okla. 376, 132 Pac. 673, Id., 237 U. S. 386, 35 Sup. Ct. 608, 59 L. Ed. 1007, involving the allotments of full-blood Creek and Chickasaw Indian allottees, respectively. Counsel attempt, however, to distinguish the case at bar from the above-mentioned cases. They say that whether an estate comes by the father or the mother is a question of fact, and upon the trial of this cause they established, and the court found, that under the laws and customs of the Seminole Tribe of Indians no person could be placed upon the approved allotment rolls, except those having a Seminole woman for a mother; that the Dawes Commission, in enrolling the Seminoles for allotment, followed the rule of enrolling the allottee according to the status of the mother. "Therefore," they argue, "the allotments came to the allottees by the blood of the mother, and upon their death intestate and without descendants it should ascend to the mother or her heirs."

We cannot agree with this contention. We may assume that what counsel say concerning the laws and customs of the Seminoles is correct, but still the deductions they seek to draw therefrom do not necessarily follow. Strictly speaking, these estates did not come to the

allottees either "by the father" or "by the mother." It is apparent at a glance that the foregoing canons of descent, adopted from the laws of Arkansas and extended over and put in force in the Indian Territory for the purpose of supplementing the acts of Congress providing for the allotment of Indian lands in severalty, are not precisely applicable to the situation presented by the record before us. Therefore the court in this as in other instances is called upon to accommodate the laws of Arkansas as nearly as may be to the situation as it finds it in order to effectuate the purpose of Congress. *McDougal v. McKay,* 43 Okla. 251, 142 Pac. 987; Id., 237 U. S. 372, 35 Sup. Ct. 605, 59 L. Ed. 1001; *Pigeon v. Buck, supra; Shulthis v. McDougal,* 170 Fed. 529, 95 C. C. A. 615.

Prior to the acts of Congress providing for allotment, the constitutional policy of the Five Civilized Tribes was ownership in common, and when the time came for private ownership and a division of the land among individual Indians, the primary allotment more nearly resembled the partition of real estate among tenants in common than the granting of an estate by a sovereign owner, or the acquisition of one through the blood of a deceased ancestor. In the very nature of things, in the cases where the devolution of the immediate allotment from the government is involved, there can be no *propositus,* as the term is generally understood, from whom succession can be traced or degrees of consanguinity reckoned. The best that can be done is to fit as nearly as may be section 2531 of chapter 49, *supra,* based upon the central idea of the common law of preserving ancestral estates in the line of the blood from whence they came, to conditions in the several Indian Nations wherein the principle of descent of landed estates through the blood of an ancestor was entirely foreign. Viewing the matter in this light, we conclude that Sissie and Lena Jefferson acquired their right to the lands in question by their membership in the

Seminole Tribe of Indians; that their allotments came to them by the blood of their tribal parents; and, both being full-blood Seminole Indians, as much "by the father" as "by the mother," that in such circumstances, the allottees dying intestate and without descendants, their allotments ascended equally to the father and his heirs and the mother and her heirs.

This conclusion, we think, accommodates, in a practical manner the rule of descent under consideration to the situation presented by the record. At any rate, it harmonizes with our conception of right and justice in the premises. In our judgment there are no sound reasons to support an exception in favor of the mother's line in the devolution of such estates among the Seminoles, where both parents are full-blood members of that tribe.

For the reasons stated, the judgment of the court below is reversed, and the cause remanded, with directions to enter judgment in accordance with the views herein expressed.

All the Justices concur.