## FINLEY v. AMERICAN TRUST CO. *et al.*

No. 5289.    Opinion Filed September 21, 1915.

Rehearing Denied October 5, 1915.

(151 Pac. 865.)

**INDIANS—Child of Choctaw Allottee—Descent and Distribution.**
Where an allottee of the Choctaw Tribe of Indians enrolled as a
half blood died in December, 1906, intestate, leaving surviving her
two children, aged, respectively, 18 and 11 months, and a hus-
band who was not a member of the tribe, her allotment descended,
subject to the right of the husband by curtesy consummate, to said
children in equal parts. Upon the death of one of said children,
on May 9, 1907, his moiety was inherited by the other. Upon the
death of the last child, on May 26, 1907, its estate in said allot-
ment, being ancestral, ascended in the maternal line, whence it
came, and passed to the nearest of kin to said child who were of
the blood of its mother, regardless of the fact that such persons
were not members of the tribe (applying sections 2522 and 2531,
Mansfield's Digest of the Laws of Arkansas).

(Syllabus by Bleakmore, C.)

*Error from District Court, Carter County;*
*Stillwell H. Russell, Judge.*

Action by Ben Finley against the American Trust
Company and others. Judgment for defendants, and
plaintiff brings error. Affirmed.

*Fooshee & Brunson* and *C. M. Threadgill,* for plain-
tiff in error.

*Guy P. Cobb* and *J. W. Hocker,* for defendants in
error.

Opinion by BLEAKMORE, C. This action was com-
menced in the district court of Carter county on Sep-
tember 27, 1911, by the plaintiff in error, for the pur-
pose of having certain deeds of conveyance canceled, and
the title to the land therein described, quieted in him.

Plaintiff asserts title to the property involved by inheritance. The cause was tried to the court, and judgment rendered against him. The uncontroverted facts are that the lands involved were allotted to Abbie Jackson, a half-blood member of the Choctaw tribe of Indians, and patents therefor issued in October, 1905. Subsequent to such allotment Abbie Jackson married one Felin Bean, from which union two children, Nicholas and Lillian Bean, were born. On December 2, 1906, Abbie Jackson Bean died, leaving surviving her her said husband and children, none of whom were enrolled members of the tribe. On May 9, 1907, said child, Nicholas Bean, aged 1½ years, died, and thereafter, on May 26, 1907, the other child, Lillian Bean, aged 11 months, died.

The mother of Abbie Jackson Bean was a full-blood Choctaw Indian, who died long prior to allotment. The father, one Yock Jackson, is a negro, enrolled as a freedman, and yet alive. The plaintiff, Ben Finley, is a Choctaw Indian, duly enrolled, and the uncle of Abbie Jackson Bean, being the only brother of her full-blood Indian mother.

It is correctly conceded that the devolution of the estate involved is governed by the provisions of chapter 49, Mansfield's Digest of the Laws of Arkansas, the pertinent sections of which are:

"Sec. 2522. When any person shall die, having title to any real estate of inheritance, or personal estate, not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following manner:

"First. To children, or their descendants, in equal parts.

"Second. If there be no children, then to the father, then to the mother; if no mother, then to the brothers and sisters, or their descendants, in equal parts.

"Third. If there be no children, nor their descendants, father, mother, brothers, or sisters, nor their descendants, then to the grandfather, grandmother, uncles and aunts and their descendants, in equal parts, and so on in other cases, without end, passing to the nearest lineal ancestor, and their children and their descendants, in equal parts."

"Sec. 2531. In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition it shall ascend to the father for his lifetime, and then descend, in remainder, to the collateral kindred of the intestate in the manner provided in this act; and, in default of a father, then to the mother, for her lifetime; then to descend to the collateral heirs as before provided."

By virtue of the foregoing provisions, upon the death of Abbie Jackson Bean the fee-simple title to said lands, subject to the right of her surviving husband, Felin Bean, by curtesy consummate (*Johnson v. Simpson*, 40 Okla. 413, 139 Pac. 129), descended to her two children, Nicholis and Lillian Bean, in equal parts. Upon the death of Nicholas, the moiety thus inherited by him passed to Lillian; and upon her death such estate being ancestral, and coming from the mother's side, went to the maternal line, whence it came, to the exclusion of the paternal line of said Lillian. *Kelly's Heirs v. McGuire*, 15 Ark. 556. The nearest of kin to said Lillian in the maternal line is her grandfather, Yock Jackson. But it is contended that he, being a negro, and not of tribal blood of

his daughter, Abbie Jackson Bean, the allottee, is without capacity to take said lands by inheritance from his grandchild Lillian, and that the plaintiff, the granduncle of Lillian in the maternal line, although related to her collaterally and in a more remote degree of blood, is the nearest of kindred of the Indian tribal blood of the allottee, and therefore takes the entire estate. As supporting this position plaintiff cites, among other cases, *Shulthis v. McDougal,* 170 Fed. 529, 95 C. C. A. 615; *Pigeon v. Buck,* 38 Okla. 101, 131 Pac. 1083; *Id.,* 237 U. S. 386, 35 Sup. Ct. 608, 59 L. Ed. 1007; *McDougal v. McKay,* 43 Okla. 251, 142 Pac. 987; *Id.,* 237 U. S. 372, 35 Sup. Ct. 605, 59 L. Ed. 1001.

In each of the above cases there was involved the application of section 2531, Mansfield's Digest of the Laws of Arkansas, *supra,* to ultimate facts dissimilar to those presented here. In all of them the question of the devolution of the estate of an immediate allottee who acquired his right to the same by virtue of his tribal blood and enrollment was considered; and it was held that upon the death of such allottee, prior to statehood, intestate and without issue, his allotment should be treated, not as a new acquisition, but as an ancestral estate, an inheritance from his parents as members of the tribe, and to ascend to the parent or parents through whom he derived his right to tribal membership.

In *Shulthis v. McDougal, supra,* it was said:

"The right to the property antedates the allotment, and is simply given effect by that act. Viewing the tribal property and its division in this light, Andrew J. Berryhill acquired his right to the land in question by his membership in the tribe. It was his birthright. It came to him by the blood of his tribal parent, and not by pur-

chase.   In applying the Arkansas statute, we shall accomplish the purpose of Congress and the Creek Nation best by treating the lands not as a new acquisition by him, but as an inheritance from his parents as members of the tribe.   His father was the only parent through whom he derived his right, and to the father the land should pass."

In *McDougal v. McKay, supra,* a case involving the devolution of a portion of the same allotment and the identical question determined in *Shulthis v. McDougal,* the federal Supreme Court said:

"The circumstances are novel, and the canons of descent contained in Mansfield's Digest are not precisely applicable thereto; but these rules must be accommodated to the facts, and the great purpose of Congress effectuated as nearly as may be."

Speaking of an estate such as was involved in the foregoing cases, Kane, C. J., in *Thorn v. Cone,* 47 Okla. 781, 150 Pac. 701, said:

"In the very nature of things, in the cases where the devolution of the immediate allotment from the government is involved, there can be no *propositus,* as the term is generally understood, from whom succession can be traced or degrees of consanguinity reckoned.   The best that can be done is to fit as nearly as may be section 2531 of chapter 49, *supra,* based upon the central idea of the common law of preserving ancestral estates in the line of the blood from whence they came, to conditions in the several Indian nations wherein the principle of descent of landed estates through the blood of an ancestor was entirely foreign."

In the instant case the question of devolution of an immediate allotment from a tribal government is but incidentally presented.   Here there is a person from whom succession is to be traced and degrees of consanguinity

reckoned. Unlike an allottee of tribal lands, the present intestate, Lillian Bean, did not acquire her right to the property in question by membership in an Indian tribe, but, on the contrary, she took it in moieties—the one by inheritance from her mother; the other by inheritance from her brother.

There is no statutory or treaty provision applicable to the descent and distribution of lands which have been allotted to members of the Choctaw-Chickasaw Tribes, such as controls the devolution of like estates in the Creek Nation since the ratification of the Creek Supplemental Agreement (32 Stat. L. 501), restricting the right to inherit to that class of persons only (if there be such) recognized as tribal citizens.

The facts in the present case do not require deviation from the rule of descent and distribution contained in Mansfield's Digest, *supra,* in order to accomplish any known purpose of Congress or the tribes. And, in the absence of statutory provision or controlling rule of decision to the contrary, we are of opinion that the laws of Arkansas above quoted, as construed by the Supreme Court of that state, govern, and that an ancestral estate such as the one here involved ascends in the line of the ancestor whence it came, and passes to the nearest of kin of the intestate who are of the blood of such ancestor, regardless of tribal citizenship or enrollment.

It is also contended by the plaintiff in his brief that the marriage of the parents of the allottee Abbie Jackson Bean was unlawful, for the reason that the mother was an Indian and the father a negro enrolled as a freedman, and to sustain such contention he quotes from Rev. Laws 1910 and Comp. Laws of Choctaw Nation. The Oklahoma

statute was never in force in the Choctaw-Chickasaw country; and nowhere in the pleadings or evidence is there any reference to the Choctaw law referred to in the brief. Such marriage was established by the uncontroverted evidence.

In *Chancey v. Whinnery*, 47 Okla. 272, 147 Pac. 1036, this court, speaking through Mr. Justice Sharp, said:

"The law is astute to preserve the sanctity of the marriage relation, the legitimacy of children, and the stability of descent and distribution, and therefore presumes innocence  *  *  *  in the absence of proof of the contrary."

And in the syllabus it is held:

"The law is so positive in requiring a party who asserts the illegality of a marriage to take the burden of proving it that such requirement is enforced, even though it involve the proving a negative."

It follows that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.