**LEWIS et al. v. KOLLER et al.**

No. 11201—Opinion Filed July 17, 1923.

Rehearing Denied Oct. 9, 1923.

**Indians—Allotments—Descent and Distribution.**

T. J., an enrolled full-blood Chickasaw Indian, died prior to statehood intestate, and without descendants, after receiving his allotment, leaving surviving him his mother, S. J., a paternal half uncle, A. J., and a maternal second cousin, L. L., all enrolled Chickasaw Indians, his father, M. J., enrolled as a full-blood Chickasaw Indian, having previously died. Held: (1) That the allotment of T. J. was an ancestral estate which came to him through the blood of his tribal parents, and as much through the blood of the mother as the father, but which was not derived from any particular individual ancestor in either or both the maternal or paternal line from which it is possible to trace succession; (2) that upon the death of T. J. intestate, unmarried, and without descendants, the one-half undivided

interest in his allotment, which would have ascended to his father, if living, passed to A. J., his paternal half uncle and paternal next of kin of the Chickasaw blood, to the exclusion of his more remote maternal second cousin, L. L.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Murray County; F. B. Swank, Judge.

Action by Lula Lewis et al. against Joseph Koller et al. in ejectment and for partition. Judgment for defendants, and plaintiffs bring error. Affirmed.

George Rider and Hatchett & Semple, for plaintiffs in error.

Walter E. Latimer, for defendants in error.

Opinion by FOSTER, C. This was a controversy involving the devolution of the allotment of Tommy Jefferson, an enrolled full-blood Chickasaw Indian, who died intestate, unmarried, and without issue on July 1, 1905, leaving surviving him his mother, Susan Jefferson, a paternal uncle, Alec Jefferson, and a maternal second cousin, Lula Lewis.

The plaintiff in error J. A. Keltner claims title through a conveyance made by Lula Lewis on November 6, 1916, and as plaintiff below, brought suit in the district court of Murray county, Okla., against Joseph Koller and Mary L. Koller to recover the possession of the undivided one-fourth interest in the allotment of Tommy Jefferson, located in Murray county, Okla., and prayed that a partition of said land be made accordingly.

For convenience the parties will be referred to as they appeared in the court below.

The defendants filed a special demurrer to the plaintiffs' petition, in which they challenged the claim of said Lula Lewis to an interest in said land, for the reason that the amended petition showed upon its face that said Lula Lewis had no right, title, estate, or interest by inheritance or otherwise in the estate of Tommy Jefferson, which she could convey by warranty deed or otherwise to the plaintiff J. A. Keltner.

The trial court sustained this demurrer, to which the plaintiffs excepted, elected to stand upon their petition and bring the case to this court for review, assigning as error the action of the trial court in sustaining said demurrer.

The petition alleges that the lands in controversy were allotted to Tommy Jefferson,

a full-blood enrolled Chickasaw Indian, who died intestate, unmarried, and without issue on July 1, 1905; that he left surviving him his mother, Susan B. Jefferson; that his father, Martin Jefferson, died previous to Tommy Jefferson; that the father and mother of Martin Jefferson were Alec Jefferson, who died prior to Martin Jefferson, and Bicey Jefferson, who died prior to Alec Jefferson; that after the death of the said Bicey Jefferson, Alec Jefferson married Sarah Ann Rhoades, and as a result of said marriage there was born Alec Jefferson, who is a paternal half uncle of said allottee, and a full-blood Chickasaw Indian.

It is further alleged that the said Bicey Jefferson, paternal grandmother of the allottee, was the daughter of Opeasubby, an enrolled Chickasaw Indian, who died on or about April 13, 1903; that the first wife of said Opeasubby was Shim-a-ho-ka, to whom were born two children, as follows: Bicey, paternal grandmother of the allottee, and a son named Joel Lewis; that said Jeol Lewis was father of three children by his wife, Sallie Lewis, two of whom died in infancy and the third is Lula Lewis, plaintiffs in error's grantor, who is the allottee's paternal second cousin.

There is no dispute between counsel that the devolution of the lands in controversy is governed by chapter 49, Mansfield's Digest of the Laws of Arkansas, in force in the Indian Territory prior to statehood, and that the controlling part thereof is section 2531, which provides:

"In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition it shall ascend to the father for his lifetime, and then descend, in remainder, to the collateral kindred of the intestate in the manner provided in this act; and, in default of a father, then to the mother, for her lifetime; then to descend to the collateral heirs as before provided."

It is not disputed that the allotment of Jommy Jefferson was an ancestral estate, and that its devolution is governed by the principles announced in Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615; Pigeon v. Buck, 38 Okla. 101, 131 Pac. 1083, 237 U. S. 386, 35 Sup. Ct. 608, 59 L. Ed. 1007; McDougal v. McKay, 43 Okla. 261, 142 Pac. 987, 237 U. S. 372, 35 Sup. Ct. 605, 59 L. Ed. 1001.

It is insisted by counsel for plaintiffs in error, however, that although Martin Jef-

ferson died prior to the death of his son, Tommy Jefferson, the one-half undivided interest in the allotment which would have ascended to him, if living, divided and passed one-fourth to the heirs of his mother, and one-fourth to the heirs of his father, and that Lula Lewis, as the sole representative of the maternal line, inherited one-fourth, and Alec Jefferson, as the sole representative of the paternal line, inherited the other one-fourth.

On the other hand, defendants in error contend that the one-half undivided interest which Martin Jefferson would have inherited, if living, passed to the paternal next of kin of Tommy Jefferson of the blood of the tribal parent by whose blood he received the allotment, and that Alec Jefferson, being his paternal next of kin of the Chickasaw blood, the entire one-half interest ascended to him.

Counsel for plaintiffs in error cite Thorne v. Cone, 47 Okla. 781, 150 Pac. 708; Finley v. Thompson et al., 68 Okla. 250, 174 Pac. 535; Finley v. American Trust Co. et al., 51 Okla. 489, 151 Pac. 865; but each of these cases is clearly distinguishable from the case at bar, and in neither of them does the contention of plaintiffs in error find support.

Thorne v. Cone, supra, was a case involving the devolution of the allotment of a deceased Seminole allottee, where both parents were enrolled Seminole Indians. It was contended that the allotment was in the nature of a maternal ancestral estate and descended to the maternal heirs of the deceased allottee to the exclusion of the paternal line. The court in denying this contention held that the allotment came to the deceased child as much through the blood of one parent as the other, and that the allotment ascended equally to the father and his heirs, and the mother and her heirs. In the body of the opinion, the court said:

"* * * Strictly speaking, these estates did not come to the allotttees either 'by the father' or 'by the mother.' It is apparent at a glance that the foregoing canons of descent, adopted from the laws of Arkansas and extended over and put in force in the Indian Territory for the purpose of supplementing the acts of Congress providing for the allotment of Indian lands in severalty, are not precisely applicable to the situation presented by the record before us. Therefore the court in this as in other instances is called upon to accommodate the laws of Arkansas as nearly as may be to the situation as it finds it in order to effectuate the purpose of Congress. McDougal v. McKay, 43 Okla. 251, 142 Pac. 987, 237 U. S. 372,

35 Sup. Ct. 605, 59 L. Ed. 1001; Pigeon v. Buck, supra; Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615.

"Prior to the acts of Congress providing for allotment, the constitutional policy of the Five Civilized Tribes was ownership in common, and when the time came for private ownership and a division of the land among individual Indians, the primary allotment more nearly resembled the partition of real estate among tenants in common than the granting of an estate by a sovereign owner, or the acquisition of one through the blood of a deceased ancestor. In the very nature of things, in the cases where the devolution of the immediate allotment from the government is involved, there can be no **propositus,** as the term is generally understood, from whom succession can be traced or degrees of consanguinity reckoned. The best that can be done is to fit as nearly as may be section 2531 of chapter 49, supra, based upon the central idea of the common law, of preserving ancestral estates in the line of the blood from whence they came, to conditions in the several Indian Nations wherein the principle of descent of land estates through the blood of an ancestor was entirely foreign."

In the light of the above case, it can serve no useful purpose to attempt to find an individual source from which Tommy Jefferson may have derived the title to his allotment, or to attempt to locate a particular ancestor either in the maternal or paternal line, from which succession might be traced or degrees of consanguinity reckoned. The task is to accommodate the laws of Arkansas as nearly as may be to the situation as we find it in the case at bar, which is to determine the devolution of an entire allotment received immediately from the tribe, having an indeterminate individual source, where the allottee dies intestate, unmarried and without descendants.

In determing the question presented, the vital and controlling consideration is to keep in mind the well-defined policy of Congress in its dealings with the various Indian Tribes, to confine the descent of allotments to the tribal blood through which the allotment came. We shall accomplish this purpose, therefore, by holding that Tommy Jefferson received his allotment through the blood of his tribal parents and that upon his death, unmarried, and without descendants, leaving no father, the one-half undivided interest which his father would have received, if living, shou'd descend to his paternal next of kin of the Chickasaw blood

The case of Finley v. Thompson et al., supra, was a case wherein Nichols Beau. enrolled as a quarter-blood Chickasaw In-

dian, died in infancy after receiving his allotment, leaving surviving him his father, Felin Bean, who was enrolled as a half-blood Chickasaw Indian, and a sister, Lillian Bean; his mother, a half-blood Choctaw Indian, having previously died. Subsequent to the death of Nicholas Bean, Lillian Bean, his sister, also died in infancy, leaving no descendants. It was held that upon the death of Lillian Bean without descendants, the land, having come to her by her mother, within the meaning of the statute, ascended to the next of kin of the mother.

In the case of Finley v. American Trust Co. et al., supra, our court held:

"Where an allottee of the Choctaw Tribe of Indians enrolled as a half-blood died in December, 1906, intestate, leaving surviving her two children, aged, respectively, 18 and 11 months, and a husband who was not a member of the tribe, her allotment descended, subject to the right of the husband by curtesy consummate to said children in equal parts. Upon the death of one of said children, on May 9, 1907, his moiety was inherited by the other. Upon the death of the last child, on May 26, 1907, its estate in said allotment, being ancestral, ascended in the maternal line, whence it came, and passed to the nearest of kin to said child who were of the blood of its mother, regardless of the fact that such persons were not members of the tribe."

In both of these cases the court held that the estate, although ancestral, passed to the next of kin of the deceased child, who were of the blood of the mother.

Upon the death of Tommy Jefferson intestate, unmarried, and without descendants, the one-half undivided interest in his allotment which would have ascended to his father, if living, passed to Alec Jefferson, his paternal next of kin and paternal half uncle of the Chickasaw blood, to the exclusion of his more remote maternal second cousin, Lula Lewis.

For the reasons stated in the opinion, the judgment of the trial court is affirmed.

By the Court: It is so ordered.