**LINCOLN et al. v. HERNDON et al.**

No. 17803. Opinion Filed Feb. 11, 1930.

Davis & Patterson, for plaintiffs in error.

Orr & Woodford, J. B. Dudley, R. M. Roddie, and Hagan & Gavin, for defendants in error.

HOLTZENDORFF, Special Justice. This case was originally tried in the district court of Seminole county, wherein the plaintiffs in error George Lincoln and Milford Roberts, sued the defendants in error, Mace Herndon and J. J. Lindley, and as the parties appear in this court in the same order in which they appeared in the trial court, they will be referred to as plaintiffs and defendants, respectively.

This case was originally decided by the Commission, and the opinion herein written by Hon. A. L. Jeffrey, Commissioner, and filed December 4, 1928. At the same time an opinion was filed in the case of Chastain v. Larney, 134 Okla. 127, 272 Pac. 471, which has now become final. The conclusion reached and the principles announced in that case are, in so far as applicable to the facts in this case, approved. In that case the authorities are reviewed in a very able and comprehensive manner and the opinion shows much study and consideration on the part of the Commission and a correct conclusion is reached. It would serve no useful purpose to review the authorities here. In so far as the conclusion announced in Finley v. Thompson, 68 Okla. 250, 174 Pac. 535, was in conflict with the principle announced in Chastain v. Larney, supra, the former case was expressly overruled. And, in so far as In re Lewis' Estate, 100 Okla. 283, 229 Pac. 483, is in conflict with the opinion herein, that case is hereby expressly overruled.

The plaintiffs alleged substantially that they were tenants in common with the defendants in certain described lands, and that such lands were allotted to Bessie Doser, a Seminole freedwoman, and that the defendants were in possession thereof, collect-ing the rents and profits and failing to account to the plaintiffs therefor; that upon the death of Bessie Doser in 1902, she left surviving her, her brother, George Lincoln, and a nephew, Milford Roberts, and that George Lincoln inherited an undivided one-fourth interest and Milford Roberts an undivided one-eighth interest in her allotment; and asked for a partition thereof. It will be observed that the plaintiffs claim as heirs of Bessie Doser. The defendants answered by substantially denying all of the allegations of the plaintiffs' petition, except they admitted the lands were allotted as alleged, and that the allottee, Bessie Doser, had departed this life on the 21st day of April, 1904, intestate, and left to survive her, as her heirs at law, an unnamed infant and her husband, Morris Cudjo, and that the infant died three days subsequent to the death of its mother. That the father of Bessie Doser, the allottee, was Doser Barkus, an enrolled Seminole freedman, who departed this life during the year 1908, intestate, and without having conveyed his interest in the land, and left surviving him, as his heirs, Daniel, Sancho, Emma, and Lucy Barkus, all enrolled Seminole freemen; and that the mother of Bessie Doser was Tena, who had departed this life long prior to enrollment. They also plead that, by virtue of these facts and the applicable provisions of the Arkansas law of descent and distribution, on the death of Bessie Doser, her lands descended to and vested in the unnamed infant, subject to an estate by the curtesy in favor of Morris Cudjo, the surviving husband of the allottee, Bessie Doser, and the father of the unnamed infant, and upon its death, intestate, said lands descended to and vested in Doser Barkus, the father of the allottee and the grandfather of the infant, subject to the curtesy estate in Morris Cudjo. And that, upon the death of Doser Barkus, the fee descended and vested in his children, Daniel, Sancho, Emma, and Lucy Barkus. They further plead that Morris Cudjo had conveyed the premises under date of June 17, 1910, and that Sancho, Emma, Daniel, and Lucy Barkus had conveyed whatever interest they inherited from Doser Barkus on September 3, 1910; such conveyance being to one D. Campbell, through whom the defendants deraigned their title. The defendants also plead that administration proceedings had been had in the county court of Seminole county, Okla., on the estate of Bessie Doser, in which a decree of heirship was entered, wherein it was determined that Daniel, Sancho, Emma, and Lucy Barkus were the sole heirs at law of Bessie Doser,

the allottee, subject to the estate by the curtesy in favor of Morris Cudjo, the surviving husband, and they plead such decree determining heirship to be res judicata as to the rights and claims of the plaintiffs. They further plead that, by virtue of the conveyances above mentioned and through mesne conveyances from the said D. Campbell, they entered into the possession of said premises, and that the claims and title of the plaintiffs had been barred by virtue of such possession continuing for more than 15 years prior to the commencement of this action, and by virtue of subdivision 4 of section 183, C. O. S. 1921, and section 8554 of the same statute, the defendants had acquired title to said lands by virtue of 15 years' adverse possession.

On the trial of the case, the following agreed statement of facts was stipulated and filed:

"The following facts are hereby stipulated by and between the parties hereto as an agreed statement of facts herein: (1) That the land in controversy, to wit: (description of land), was allotted and patented to Bessie Doser, who was enrolled as a Seminole freedman, opposite roll No. 2070, and that said Bessie Doser died intestate while seized and possessed of the above-described land in the last week of April, 1904.

"(2) That upon the death of Bessie Doser, she left surviving her a husband, Morris Cudjo, and an unnamed infant child, who died a few days after the death of the said Bessie Doser.

"(3) That the father of Bessie Doser was Doser Barkus, who survived the said Bessie Doser and the said unnamed infant child, and the said Doser Barkus died sometime during the year 1908; that the mother of Bessie Doser was Tena, who died prior to enrollment, and was never enrolled. That upon the death of the said Doser Barkus, as aforesaid, he left surviving him the following children, to wit: Daniel Barkus, Seminole freedman enrolled opposite No. 2060; Sancho Barkus, Seminole freeman enrolled opposite No. 2061; Emma Barkus, Seminole freedman enrolled opposite No. 2062; Lucy Bruner, nee Barkus, Seminole freedman, enrolled opposite roll No. 2066, who were the sole and surviving paternal brothers and sisters of the allottee, and that the defendants in this cause have by proper conveyance acquired all the right, title and interest, if any, inherited by the paternal heirs.

"(4) That the sole surviving children and descendants of Tena are the plaintiff, George Lincoln, Seminole freedman enrolled No. 2253, a son, and Jake Roberts and Milford Roberts, grandchildren of said Tena, who are the sole surviving heirs and children of Alex Roberts, a child of the said Tena; that the said George Lincoln, Jake Roberts, plaintiff herein, and the said Milford Roberts were the sole and only surviving maternal brothers, nieces, and nephews of the said Bessie Doser.

"(5) It is further stipulated and agreed that the plaintiff or defendant may introduce any further or additional testimony not in conflict with this stipulation."

In addition to the stipulation there was oral testimony offered as to the absence and disappearance of Morris Cudjo for a period of seven years or more and the possession of the premises by the defendants. It is conceded by both parties, the applicable provisions of chapter 49 of Mansfield's Digest of the Laws of Arkansas controls the devolution of said estate. At the conclusion of the trial in the lower court, findings of fact and conclusions of law were made as requested by counsel. The trial court found that, on the death of the infant, Morris Cudjo, the father, inherited the entire estate. Counsel for both the plaintiffs and defendants concede this to be error.

Plaintiffs now contend:

(A) That the judgment of the trial court is erroneous in holding the father of the unnamed infant inherited the entire estate.

(B) That the estate in the hands of the infant was ancestral, and upon its death, one-half passed to and vested in its grandfather and the other half passed to and vested in its grandmother and her heirs.

(C) That the decree of heirship is not res judicata as to them.

(D) That the plaintiffs were not barred by the statute of limitations, for the reason Morris Cudjo, the surviving husband, had an estate by curtesy for life, and that he and his grantees were entitled to possession of the lands until his death, and that the plaintiffs could not sue for or demand their inheritance until the life estate had terminated, either by death of the life tenant or his absence unexplained and under such circumstances for a period of seven years or longer as to raise a presumption of his death.

The defendants contend:

(1) That plaintiffs never inherited any interest in the lands.

(2) That the decree of heirship is final and conclusive and is res judicata as to the claims and interest of the plaintiffs.

(3) That the plaintiffs failed to show

by sufficient evidence the death of Morris Cudjo or the termination of the life estate.

(4) That the judgment of the trial court is correct, notwithstanding the wrong theory upon which it was rendered.

(5) That on the death of the unnamed infant, the estate went to the heirs of its mother, under the general laws of Arkansas, and no ancestral feature attached.

(6) That by reason of their occupancy of the premises for 15 years, the plaintiffs are barred by the statute of limitations and the defendants have title by prescription.

They admit that the judgment of the trial court is not correct in holding that the estate, upon the death of the unnamed infant, passed to its father. They admit, also, that Morris Cudjo, the father of the unnamed infant, had a life estate by the curtesy.

In their briefs and in the oral argument, the defendants contend, because Bessie Doser was a freedwoman, she did not acquire her right to an allotment by virtue of any Seminole blood, and had she died without issue, the Arkansas law of descent and distribution would have governed the devolution of her estate, without reference to any ancestral feature. They cite section 2 of the Seminole Treaty of March 21, 1866. This treaty provides for the abolition of slavery and that persons of African descent and blood who were permitted to settle in the Seminole Nation "shall have and enjoy all the rights of native citizens and the laws of said nation shall be equally binding upon all such persons, of whatever race or color, who may be adopted as citizens and members of said tribe."

They also cite Ross v. Wertz, 70 Okla. 56, 172 Pac. 968, and other authorities. In the case of Ross v. Wertz, supra, while the proposition was discussed by the court, it was found unnecessary to a decision. Bailey v. Benn, 81 Okla. 285, 198 Pac. 323, and Parker v. Hawkins, 97 Okla. 195, 223 Pac. 396, hold contrary to this contention.

It is next insisted by the defendants that Bessie Doser was the propositus, and that subdivision 2 of section 2522, Mansfield's Digest of the Laws of Arkansas, controls the devolution of her allotment. This is not in accordance with the holding of this court in the case of Chastain v. Larney, supra, to the effect that the unnamed infant is the propositus, and the estate, being ancestral on its mother's side, would descend according to subdivision 3 of section 2522, as limited by the provisions of section 2531, and

would go to the heirs of the unnamed infant according to the provisions of these two sections.

Bearing in mind that the infant is the propositus, and it having died without children, father (capable of inheriting), mother, brothers or sisters, or their descendants, then the grandfather, grandmother, uncles and aunts, and their children on the mother's side would take the estate as heirs, since the stipulation shows the propositus left a maternal grandfather and uncle and aunts and their descendants who would under the authority of Kelly's Heirs v. McGuire, 15 Ark. 555, and Kontz v. Davis, 34 Ark. 590, constitute the heirs of the infant and would share in equal parts, either per capita or per stirpes. In other words, the estate would not ascend to the grandparents in equal parts, but, by virtue of statutory enactments, it would go to the grandparents and the uncles and aunts, nieces and nephews. Of these, there were six who took per capita and two who took per stirpes. That is, Doser Barkus, the grandfather, Daniel, Sancho, Emma, and Lucy Barkus and George Lincoln, the uncles and aunts, each of whom would inherit an undivided one-seventh interest, and the children of Alex Roberts, a deceased uncle, would take per stirpes. Of these there were Milford and Jake Roberts, each of whom acquired an undivided one-fourteenth interest.

Stated differently, the estate came to the unnamed infant by virtue of the blood of its mother independently of any tribal blood and was ancestral only in so far as the infant was concerned. Upon the death of the infant, intestate and without father (capable of inheriting), brothers or sisters or their descendants, it went to its heirs in equal parts, who were of the blood of its mother, the transmitting ancestor, so the fact that its maternal grandfather and grandmother were or were not citizens of the Seminole Tribe became immaterial. Roubedeaux v. Quaker Oil & Gas Company, 23 Fed. (2nd) 277.

The estate would not, therefore, ascend one-half to the maternal grandfather, and the other half to the maternal grandmother, but would go to the heirs of the infant who were of the blood of its mother, the transmitting ancestor. In order to determine who these heirs were, it is necessary to determine the same from the language of the Statutes of Arkansas, which is contained in section 2522 of chapter 49 of Mansfield's Digest, which is as follows:

"When any person shall die, having title

to any real estate of inheritance, or personal estate not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following manner:

"First: To children, or their descendants, in equal parts.

"Second: If there be no children, then to the father, then to the mother, if no mother, then to the brothers and sisters, or their descendants, in equal parts.

"Third: If there be no children; nor their descendants, father, mother, brothers or sisters, nor their descendants, then to the grandfather, grandmother, uncles, and aunts, and their descendants, in equal parts, and so on in other cases, without end, passing to the nearest lineal ancestor, and their children and their descendants in equal parts."

If we had no other provision or limitation than this section, the estate, upon the death of the unnamed infant, without children or their descendants, would go to its father for life, and then to the collateral kindred, but section 2531, supra, limits the inheritance where the estate is ancestral to the blood of the transmitting ancestor. This section is as follows:

"In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs, but if the estate be a new acquisition, it shall ascend to the father for his lifetime, and then descend in remainder, to the collateral kindred of the intestate in the manner provided in this act; and in default of a father, then to the mother, for her lifetime; then to descend to the collateral heirs as before provided."

Applying the provisions of these two sections to the facts in this case, we find that the unnamed infant died without children, or their descendants, and without mother and without a father capable of inheriting, and without brothers or sisters or their descendants, but leaving a grandfather and uncles and aunts and their descendants. By virtue of the agreed statement of facts, the lands were inherited by the infant from its deceased mother, and consequently it was an ancestral estate coming from the mother, and the heirs would be limited and restricted by the provisions of section 2531, supra, so that it would have to ascend to the heirs of the infant who were of the blood of its mother, the transmitting ancestor.

Manifestly, Morris Cudjo, the surviving husband of the allottee and the father of the deceased child, could not inherit, as he is not of the blood of Bessie Doser. And, in default of a mother, and the father being incapable of inheriting, and in the absence of brothers or sisters or their descendants, the devolution of the estate would then be controlled by subdivision 3 of section 2522, supra, and would go to the maternal grandfather, grandmother, uncles and aunts, and their descendants, in equal parts, per capita and per stirpes. If it were not for the limitations and restrictions of section 2531, supra, the estate, upon the death of the unnamed infant, would have passed to its father, Morris Cudjo, for life, as undoubtedly he is the nearest of kin of the infant, but is not an heir by virtue of the limitations contained in section 2531, supra, he not being of the blood of the transmitting ancestor.

There is some doubt as to the exact meaning of the limitation contained in section 2531, supra, in that it is provided that if the estate came by the father, it shall ascend to the father and his heirs, and if by the mother, the estate or so much thereof as came by the mother shall ascend to the mother and her heirs.

A literal application of this statute could not be made in the instant case, for the reason that the estate came wholly by the mother, and if it ascended to her and her heirs, it would again vest in the unnamed infant and there rest, for it could not be said that any other person than this unnamed infant was the heir of the mother. So it evidently means that this estate, having come by the mother, should descend to the heirs of the infant, who are of the blood of the transmitting ancestor. It was so held in Chastain v. Larney, supra, and Finley v. American Trust Company, 51 Okla. 489, 151 Pac. 865.

It has been determined in Kelly's Heirs v. McGuire and Kountz v. Davis, supra, that the grandfather, uncles, and aunts of the infant would inherit equally per capita and their descendants per stirpes.

Quoting from Kountz v. Davis, supra, decided in 1879, it is said:

"J. and W., brothers, were joint owners, by purchase, of land. J. died, leaving surviving him his father and mother and brothers and sisters. Afterwards W. died, leaving a child, and soon afterwards the child died, without issue, leaving its grandfather and grandmother and uncles and aunts on its father's side. Held: That upon the death of J. his interest in the land ascended

to his father for life, remainder in fee to his brothers and sisters; and upon the death of the child, its interest in the land ascended to its grandfather and grandmother and uncles and aunts on the father's side in equal parts."

This construction was placed upon this statute by the Supreme Court of Arkansas prior to its adoption and extension in the Indian Territory, and as said in Joines v. Patterson, 274 U. S. 544, 71 L. Ed. 1194:

"The extension over Indian Territory of the laws of Arkansas carried the settled constructions placed upon them by the courts of that state, and as so construed they have become in effect laws of the United States."

We are therefore bound by the construction placed upon this statute by the Supreme Court of Arkansas prior to its adoption in the Indian Territory. The provisions of par. 2 of the Seminole Agreement approved June 2, 1900, 31 Stat. at Large 250, have been held to be inapplicable as a limitation or as preferring the line of the mother, leaving the Arkansas laws of descent and distribution controlling. See Bruner et al. v. Sanders et al., 26 Okla. 673, 110 Pac. 730.

The persons who are to inherit are not necessarily the next of kin of the ancestor, but are to be determined by the laws in force at the time the inheritance is cast.

"Ancestor * * * the person from whom the 139 Okla. 171, 281 Pac. 787. This definition is:

"Ancestor is the person from whom the land immediately descends to the decedent, without reference to remote ancestors."

In the case before us the **ancestor** is the unnamed infant. We are to determine its heirs without reference to remote ancestors. This is in harmony with the holding of this court in the case of Gray v. Chapman, 122 Okla. 130, 243 Pac. 522, wherein it is held that a liberalized construction has been adopted by most of the states of the Union, so that the courts now look only to the immediate ancestor. Applying this construction to the facts in the case now under consideration, we determine the heirs of the infant, who are of the blood of Bessie Doser, the immediate ancestor.

It is not material that she received her allotment by virtue of the blood or tribal enrollment of her father or mother. We simply determine who are the heirs of the infant in the line of its mother. This is not entirely in harmony with In re Lewis' Estate, 100 Okla. 283, 229 Pac. 483, which undertakes to follow Kelly's Heirs v. McGuire

and Thorn v. Cone, 47 Okla. 781, 150 Pac. 701, in that therein the court states:

"The estate ascends back to the line from whence it came.'

—which is a correct statement of the law, but the court in that case undertakes to trace the ancestral estate back from whence the allottee received it, and consequently followed the well-settled rule governing the devolution of primary allotments, and there held that, since the allotment came to William Lewis as much through the blood of one of his tribal parents as the other, it ascended to them equally. A correct application of the law to the facts in that case would have resulted in the estate being ancestral in the hands of Sarlin Lewis and would have passed to his heirs in the line of his father, from whence the estate came, and would have resulted in the distribution of the estate in equal shares to the paternal uncles and aunts and the maternal uncle. In that case the court says:

"While there is no specific statute which we know of that provides such a rule, it is the only logical and reasonable construction that can be applicable to Indian allotments."

Manifestly there was no authority for tracing the ancestral feature further than the source of title of the immediate ancestor.

In Ned et al. v. Countiss et al., 84 Okla. 138, 203 Pac. 168, the rule herein announced is adhered to, except the language there used, is that:

"Upon the death of said child, the estate that came to it by its father ascended to the heirs of the father."

While the correct conclusion was reached, the expression "to the heirs of the father" is not correct, in that the estate goes to the heirs of the propositus who are of the blood of the transmitting ancestor and not to the heirs of the transmitting ancestor.

In Minshall et al. v. Berryhill, 83 Okla. 100, 205 Pac. 932, it is held that the inheritance is direct from the allottee as the propositus and not through the ancestor from which the estate came.

In other words, in the instant case the inheritance is from the unnamed infant and not from its mother from whom the estate came. The heirs of the child are to be determined and not the heirs of the deceased mother, as it is conceded that the child was the sole heir of its mother. If the heirs of the mother were to be determined, the proceedings and heirship in the county court would be final and conclusive.

In this circumstance section 1359, C. O. S. 1921, is inapplicable.

The court reached a correct conclusion in the case of Finley v. American Trust Company, supra, in discussing the devolution of an estate inherited by an infant from its mother, wherein it is said:

"Its estate in said allotment, being ancestral, ascended in the maternal line whence it came and passed to the nearest of kin to said child who were of the blood of its mother, regardless of the fact that such persons were not members of the tribe."

This case construed sections 2522 and 2531, Mansfield's Digest, supra, and the only fault we have to find with the language used in that case is that it held that the estate passed to the nearest of kin of the child, whereas, a correct statement of the rule, we think, is that the estate passes to the heirs of the child. There is a sharp distinction in this respect in the application of the governing laws of Arkansas to the facts in the case at bar, in that if the estate passed to the nearest of kin of the child, it would, in this instance, go to its grandfather, whereas, if it passes to the heirs of the child, who are to be determined by the applicable provisions of section 2522, supra, as modified and limited by the provisions of section 2531, the heirs are determined to be the grandfather and uncles and aunts, and their descendants, who inherit in equal shares, per capita and per stirpes.

In the case of Finley v. Thompson, 68 Okla. 250, 174 Pac. 535, it is held:

"The land in controversy having come to her by her mother within the meaning of the statute, it ascended to the heirs of her deceased mother."

This case, in so far as it conflicts with this opinion, has been overruled in Chastain v. Larney, supra.

In Lewis v. Koller, 92 Okla. 243, 218 Pac. 1085, it is held that the estate of the child goes to the next of kin of the blood of the transmitting ancestor. In Chastain v. Larney, supra, the court had under consideration the devolution of a Seminole estate, and discussed the conflicting language in a number of cases, and reached the conclusion that the modern or American doctrine controls, to the effect that the estate is ancestral only in the person last seized of said lands.

Some contention is made that the maternal grandmother of the unnamed infant was not enrolled as a Seminole citizen. Presumably this is on the theory that only Seminole citizens could inherit. It was held in Grayson v. Harris, 69 L. Ed. (U. S.) 652,

that the proviso in the Creek Supplemental Treaty is not limited to the heirs of the first allottee, but applies to all descendants and distributees. No such limitations are to be found in the Seminole Treaty, as it has been held that paragraph 2 of the Seminole Agreement, supra, was not a statute of descent. Bruner et al. v. Sanders et al., supra; Lasiter, Adm'r, v. Ferguson, 79 Okla. 200, 192 Pac. 197.

Whether this situation is applicable and limits or restricts the descent from the unnamed infant within the meaning of Grayson v. Harris, supra, becomes immaterial, since the heirs of the unnamed infant who were of the blood of the infant's mother were stipulated to be Seminole citizens.

We next come to the question of the statutes of limitations by reason of adverse possession. The record in this respect discloses that one D. Campbell, the grantee of Morris Cudjo and of Sancho, Daniel, Emma, and Lucy Barkus, filed a petition for administration proceedings on the estate of Bessie Doser, in which he states her heirs to be unknown, but that he is interested in her estate and it is necessary that an administrator be appointed to partition the land. This application was filed November 26, 1910, and was after he had taken and recorded the deed from the life tenant, Morris Cudjo, and after he had his deed from the heirs of Doser Barkus. Evidently he did not claim the entire fee at that time, but recognized others to be interested. This petition was filed something like six years and seven months after the death of Bessie Doser. The final report of the administrator shows both the plaintiffs in this action, as well as Doser, Daniel, Sancho, Emma, and Lucy Barkus, to be heirs, and that there were no assets of the estate except the allotment, and no debts or claims.

Whether the county court had jurisdiction to administer upon the estate under these circumstances is doubtful. Wolf et al. v. Gills, 96 Okla. 6, 219 Pac. 350; Homer v. Lester et al., 95 Okla. 284, 219 Pac. 392.

The deed shown in the record at page 108 also shows that Campbell recognized others as heirs of Bessie Doser, than his grantors. The county court in its final decree found Morris Cudjo to have a life estate, and found Sancho, Daniel, Emma, and Lucy Barkus to be the sole heirs of Bessie Doser. This order was not entered until October 2, 1911. Evidently up to this time the defendants and their grantors recognized there were others than themselves interested in the estate.

Consequently, their original entry upon

the lands was not under claim of exclusive ownership, and the statute of limitations at least did not commence to run until October 2, 1911, when the decree determining the grantors of the defendants to be the sole heirs of Bessie Doser was entered. Fifteen years from that date had not expired when this action was commenced.

To determine whether the statute of limitations had run so as to bar the plaintiffs, we must look to the original entry and ascertain the intention. As was said in Lessee of James H. Ewing v. Burnet, 9 L. Ed. (U. S.) 624:

"An entry by one man on the land of another is an ouster of the legal possession arising from the title, * * * according to the intention with which it is done."

In other words, when the defendants and their predecessors in title first made entry upon the lands in controversy, they evidently did not have the intention of ousting the other cotenants. They had a right of entry by virtue of the purchase of the life estate of Morris Cudjo, and no intention is manifested by their acts to exclude the other interested parties, at least until the entry of the final decree in the county court decreeing the heirs of Bessie Doser.

The right to curtesy may be sold, assigned, and transferred, and the assignee has a right to the use of the premises during the life of said tenant. Miles v. Miles et al., 73 Okla. 198, 175 Pac. 222.

In fact, the remainderman could not eject the holder of the life estate until it terminated. Evidently this was the understanding of Campbell at the time he took the deed from Morris Cudjo. No subsequent change in the construction of the law as it then existed could affect that right? Copley v. Ball, 176 Fed. 682, 100 C. C. A. 234; Stricklin v. Moore (Ark.) 135 S. W. 360; 7 R. C. L. 1010; Haskett v. Maxey, 134 Ind. 182, 33 N. E. 358, 19 L. R. A. 379; Lasiter, Adm'r, v. Ferguson, 79 Okla. 200, 192 Pac. 197; Cassem v. Prindle, 258 Ill. 11, 101 N. E. 241.

Nor could the payment of taxes and the repair of fences assist the defendants, for it is provided in section 8448, C. O. S. 1921, as follows:

"The owner of a life estate must keep the buildings and fences in repair from ordinary waste and must pay the taxes and other annual charges, and a just proportion of extraordinary assessments benefiting the whole inheritance."

It is contended on rehearing that Morris Cudjo did not have an estate by the curtesy, due to the recent holding of the United States Supreme Court in the case of Marlin v. Lewallen, 72 L. Ed. 467, and Longest v. Langford, 72 L. Ed. 471, wherein it was held, the extension of chapters 20 and 104 of Mansfield's Digest of the Laws of Arkansas, which provide for an estate by the curtesy, were not intended to be adopted by the Creek or Choctaw Tribes, as nothing was said concerning such an estate in any of the treaties with these two tribes.

It was admitted in the case before us by all parties in their pleading and briefs that Morris Cudjo had an estate by the curtesy, and whether he did or did not, it is not necessary for us to decide. Where a proposition of law is not raised in the trial court, the same cannot be raised in the Supreme Court for the first time. Wilson v. Levy, 140 Okla. 74, 282 Pac. 679. Nor can a party be permitted to change the theory of his case in the Supreme Court. Adams v. Berry-Beall Dry Goods Co., 99 Okla. 86, 225 Pac. 927; Harrison v. Cummings et al., 107 Okla. 98, 230 Pac. 702; Kennedy et al. v. Beets Oil Co., 105 Okla. 1, 231 Pac. 508.

Until and unless Morris Cudjo, the life tenant, is dead, the plaintiffs would not be entitled to the possession of the premises, nor to maintain this action (Haskett v. Maxey, supra), and while the proof does not show any too much diligence on the part of the plaintiffs to determine whether he was dead or not, and while the trial court found the evidence insufficient to raise a presumption that he is dead, after his absence of seven years or more, we are inclined to believe that, in the absence of any evidence to the contrary, it may be fairly assumed from his long absence, under the circumstances testified to in this record, and unexplained, that he is presumed to be dead, and in this respect the finding of the trial court is without evidence to support it. See Modern Woodmen of America v. Ghromley, 41 Okla. 532, 139 Pac. 309; Lesser v. New York Life Insurance Company (Cal.) 200 Pac. 23. Modern Woodmen of America v. Michelin, 101 Okla. 217, 225 Pac. 163.

The judgment of the trial court is reversed, and the cause remanded, with directions to enter judgment in conformity with the views herein expressed.

LESTER, C. J., STEVENS, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and ARRINGTON, JJ., concur.

HUNT, J., absent.

MASON, C. J., and CLARK and RILEY, JJ., disqualified and not participating; Hon. BROOKS HOLTZENDORF, Hon. ROSCOE ARRINGTON, and Hon. WALTER STEVENS appointed as Special Justices.

220

Note.—See under (3) L. R. A. 1915B, 729; 8 R. C. L. p. 708; R. C. L. Perm. Supp. p. 2310. (4) 2 R. C. L. p. 79; R. C. L. Perm. Supp. p. 323. (5) 23 R. C. L. p. 587; R. C. L. Perm. Supp. p. 5350. See "Appeal and Error," 3 C. J. §580, p. 689, n. 41. "Death," 17 C. J. §5, p. 1166, n. 25. "Descent and Distribution," 18 C. J. §17, p. 817, n. 20. "Estates," 21 C. J. §122, p. 972, n. 34; p. 973, n. 35. "Indians," 31 C. J. §96, p. 524, n. 40. "Judgments," 34 C. J. §1325, n. 915, n. 55.