## GRAHAM et al. v. PICKENS et al.

No. 20518. Opinion Filed Dec. 13, 1932.

Withdrawn, Corrected, Refiled, and Rehearing Denied June 6, 1933.

M. W. Eddleman and H. A. Stanley, for plaintiffs in error.

Don Welch, for defendants in error.

CULLISON, J. Plaintiffs instituted suit, seeking to recover possession of certain real property from defendants. After said suit was filed, certain other parties intervened in said cause and claimed an interest in and to said property. Defendants and interveners will be referred to as defendants.

Upon the issues thus framed, the case was tried to the court upon an agreed statement of facts, and the court found favorably to plaintiffs.

The only question for determination is an interpretation of section 2522, chapter 49, Mansfield's Digest, in force in Indian Territory prior to statehood, and more particularly the third paragraph thereof, which is as follows:

"If there be no children, nor their descendants, father, mother, brothers or sisters, nor their descendants, then to the grandfather, grandmother, uncles and aunts and their descendants, in equal parts, and so on in other cases, without end passing to the nearest lineal ancestor, and their children and their descendants, in equal parts."

The record discloses that the land under consideration was a part of the allotment of Lizzie Pickens, a full-blood Choctaw Indian who died on June 26, 1904, leaving surviving, her husband, Sammie Courtney, and her only child, Edmon Courtney.

Edmon Courtney died in infancy on August 6, 1904, and Sammie Courtney died in 1916.

It is conceded by both sides that, under the law of descent in force in the Indian Territory at the time of the death of Lizzie Courtney, nee Pickens, the property of a parent was inherited by the children of said parent, and that Edmon Courtney inherited all of his mother's allotment.

Shortly after the death of the mother, Edmon Courtney died, leaving no brothers or sisters nor mother nor father capable of inheriting, but he did leave the following distant relatives, to wit: I. Hunter Pickens, great grandfather on his maternal grandfather's side, and Clayborn Pickens, Leona Pickens, Joseph Pickens, Eli Pickens, Apsie Carney, Hattie Stout, Mollie Burns, Leah Emi-yah-tubbee, and Jane Worcester, sons and daughters of I. Hunter Pickens and great uncles and great aunts of Edmon Courtney; also Lila Bass, daughter of Un-tah-ho-ye, a deceased great aunt on his grandmother's side.

The trial court held that I. Hunter Pickens inherited the estate as the lineal ancestor of Edmon Courtney, and upon Pickens' death the same descended to his sons and daughters, who were all great aunts and great uncles of Edmon Courtney, but said judgment excluded from inheritance Lila Bass, the heir of Un-tah-ho-ye.

Defendants contend that upon the death of Edmon Courtney his property was inherited by the nearest lineal heir, to wit, his great grandfather, I. Hunter Pickens, and the heirs of the other three great grandparents, so that his estate should have been divided into four equal parts, one-fourth going to I. Hunter Pickens, great grandfather living at the time of the death of Edmon Courtney, one-fourth to the heirs of each of the other three great grandparents, who were deceased.

The Arkansas statutes of descent were considered very carefully by the Supreme Court of that state in the case of Kelly's Heirs et al. v. McGuire et al., 15 Ark. 555.

This court has followed the Kelly Case, and has also passed upon the question of whether the estate was divided into two equal parts and inherited by the grandparents, or whether the estate was inherited by the surviving grandparent and uncles and aunts in equal parts, in the case of Lincoln et al. v. Herndon et al., 141 Okla. 212, 285 P. 120, at page 215, Okla. Rep., page 123 Pac. Rep.:

"In other words, the estate would not ascend to the grandparents in equal parts, but, by virtue of statutory enactments, it would go to the grandparents and the uncles and aunts, nieces and nephews. Of these there were six who took per capita and two who took per stirpes; that is, Doser Barkus, the grandfather, Daniel, Sancho, Emma, and Lucy Barkus, and George Lincoln, the uncles and aunts, each of whom would inherit an undivideed one-seventh interest, and the children of Alex Roberts, a deceased uncle would take per stirpes. Of these there were Milford and Jake Roberts, each of whom acquired an undivided one-fourteenth interest. * * *

"The estate would not, therefore, ascend one-half to the maternal grandfather and the other half to the maternal grandmother, but would go to the heirs of the in-

fant who were of the blood of its mother, the transmitting ancestor."

Also, in the recent case of Jarvis et al. v. Goforth et al., 147 Okla. 168, 296 P. 477, the court held (syllabus No. 5):

"The nearest relatives surviving the intestate were three sisters and one brother of his paternal grandmother and three sisters of his paternal grandfather. They were all related to him in the same degree and were all of the blood of the father, and on his death they each inherited an undivided one-seventh interest in the paternal half of the allotment."

The Lincoln Case, just cited, holds that the estate would not ascend in two equal parts to the two grandparents, but the inheritance would go to the heirs of the infant who were of the blood of the transmitting ancestor.

In the Goforth Case the grandfather and grandmother were dead, but each grandparent left surviving heirs. The grandmother left surviving three sisters and one brother, and the grandfather left three sisters. If the estate should have been divided equally between the two grandparents and descended to the heirs of each by right of representation, then the seven uncles and aunts would not inherit in equal parts, but the court followed the Lincoln Case and held that each of the uncles and aunts inherited in equal parts, because section 2522, supra, specifically provides in such cases that grandfather, grandmother, uncles, and aunts and their descendants share in equal parts.

In the case at bar the heirs are one degree more remote than in the two cases cited, but the rule applicable would be the same. These cases hold against defendants' contention.

We must consider the judgment of the trial court further and determine whether the court properly construed and applied the statute under consideration.

We observe that the statute under consideration (section 2522, Mansf. Digest) provides that, where a person dies and leaves no children nor their discendants, father, mother, brother, or sister, nor their descendants, then the inheritance goes to the grandfather, grandmother, uncles and aunts and their descendants, in equal parts, "and so on in other cases, without end. * * *"

In the case at bar the nearest surviving lineal maternal ancestor was I. Hunter Pickens, a maternal great grandfather. The maternal grandfather, the maternal grandmother, and the other three maternal great grandparents died prior to the decedent, Edmon Courtney.

The statute quoted, supra, provides that if the propositus be deceased and has no children, nor their descendants, nor father, mother, brothers or sisters, nor their descendants, then his estate shall pass to the grandfather, grandmother, uncles and aunts and their descendants, in equal parts, and "so on in other cases, without end. * * *" We construe said provision, "and so on in other cases, without end," to mean that in case there are no children, nor their descendants, no father, mother, brothers or sisters, nor their descendants, and then, if there are no grandfather, grandmother, uncles, and aunts and their descendants, the estate, under the provisions of said statute, shall vest in equal parts to the next classes of kin, surviving, to wit, the great grandparents, the great uncles, and great aunts, and their descendants, by right of representation. Giving this section such an interpretation makes the same applicable to the case at bar.

We hold that the legislative intent in the enactment of said section was to provide a statute of descent covering all cases that might arise, and consider that it is the logical and reasonable interpretation to be placed upon said portion of the section under consideration.

Applying the construction to the case at bar, we find that Edmon Courtney left a great grandfather, nine great uncles and great aunts living at the time of his death, and a daughter of a deceased great aunt.

The statute provides that the grandparents and uncles and aunts inherit in equal parts, and applying the same reasoning to the case at bar, where we have a great grandparent, great uncles and great aunts, and the descendant of a deceased great aunt, we hold that these are called to the inheritance and that they inherit in equal parts. Under our construction, if Un-tah-ho-ye, mother of Lila Bass, had survived Edmon Courtney, she would have been one of the eleven heirs to share equally his estate, but she having died prior to the death of Edmon Courtney, her descendant, Lila Bass, took that portion of the estate which she would have received had she survived Edmon Courtney, the propositus.

The judgment of the district court is re-

versed, with directions to enter judgment in accordance with this opinion.

RILEY, C. J., and SWINDALL, ANDREWS, McNEILL, and BUSBY, JJ., concur. OSBORN, BAYLESS, and WELCH. JJ., absent.